# Consolidated Ice Company v. Pennsylvania Railroad Company, Appellant.

*Railroads—Eminent domain—Condemnation of leasehold—Improvements—Use of improvements—Removal of improvements.*

Where a railroad company after having acquired a fee in leased premises, files a bond to condemn the unexpired term of the leasehold, and notifies the lessee, who has the right to remove the improvements,

488 CONSOL. ICE CO. *v.* PENNA. R. R. CO., Appellant.

to remove the same, and upon the lessee's refusal to do so, the company removes and sells them after proper advertisement, the lessee is entitled to recover the value of the leasehold interest including the use of the improvements for the unexpired term and also the amount of money which the company received from the sale of the improvements, if such sale was made after a proper and bona fide effort by the company to secure the best prices for the property. In such a case the lessee is not entitled to the value of the machinery and fixtures in place, but only to the value of their use during the unexpired term.

Argued March 2, 1909. Appeal, No. 2, Oct. T., 1909, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1905, No. 95, on verdict for plaintiff in case of Consolidated Ice Company v. Pennsylvania Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Appeal from award of jury of view. Before EVANS, J.

The defendant presented the following points:

1. As to the value of the ice plant and machinery after removal, the measure of damages, where an opportunity of removal has been given to the owner of which he has not availed himself, is the price which the railroad company obtained for the property after removal. The evidence being undisputed that such notice was given and such resale had in this case, in good faith, by the defendant company, the price obtained in this manner is conclusive upon the plaintiff. *Answer:* Refused. [1]

. 2. As to machinery and plant in place, the measure of damages is the difference between the value of such machinery and plant at the time of taking, and their value at the termination of the lease. In other words, the act of the defendant having shortened the term of the lease and anticipated the period of removal, the plaintiff is entitled to recover the amount which represents the use or deterioration of the machinery, etc., during that period, without allowance of the items of repair work as such, as repairs never having been made should not be compensated for. *Answer:* Refused. [2]

The court charged in part as follows:

[There is just one other question which has been urged

strongly on both sides of this case, and for your purposes I will instruct you as to your disposition of it; the plaintiff company had the right of removal of the buildings and fixtures, all the improvements on the leasehold at its termination. It was not bound to remove them. What I mean by that is that there was no obligation upon the plaintiff to clear off the land when its lease expired. But if it considered the improvements on the land of any value, it had the right to remove them or the right to leave them there, just as it saw fit. There is a question here as to whether or not if these fixtures and improvements had a value and the plaintiff desired to avail itself of that value, it should have taken away the property. I charge you in this case that it was not the duty but it was the privilege of the plaintiff to take away its fixtures when this lease was condemned; and whatever value they had, they belonged to the plaintiff if it wanted to take them away. The plaintiff did not take them away; and the defendant, the Pennsylvania Railroad Company, disposed of them. The defendant, in disposing of them and receiving money for them, would have to account for them, because it sold something that did not belong to the defendant. It would have to account for them in good faith. It advertised them for sale; it assumed to sell property which, under the law as I have instructed you, did not belong to it; and therefore in good faith it must account for it. It must act all the way through in good faith. It was, not technically but in substance, the trustee, because of assuming to take charge of property that did not belong to it and sell it, and it must act throughout in good faith and account for what it got. If it did that, that is the measure of its responsibility and it could not be held to more. There is some controversy here as to whether the defendant got what it should have reasonably gotten for these improvements that were on the leasehold. If I recollect aright, the testimony is undisputed that so far as the building was concerned it was not worth anything to remove; it would cost all the material was worth to remove it. But the evidence is conflicting as to what the machinery was worth. Its value varies from the testimony of Mr. McAfee,

who, I think, put its value at about $65,000, to $5,000 given by other witnesses.] [3]

[Now, gentlemen, this case is not without some difficulty on your part. It is a case which requires your careful consideration. It is not a case, like most cases where witnesses testify to a positive fact and you simply take the testimony and determine the fact; there is considerable more in this case. You must take the testimony and apply to it your own judgment in the matter; you must exercise a very large amount of intelligent judgment in disposing of this testimony. You must determine what was the value of this leasehold. And in order that I may not be misunderstood, I want again to tell you that this leasehold consisted of the land as you have heard it described, the buildings erected upon it and the fixtures, consisting of the machinery, coils, pumps, wells, and all other items which you have heard testified to here, going to make up this ice plant with the electric light plant or any other permanent fixtures on the place.] [4]

[Again, we have permitted both parties to show the value in place and the removal value, that is, the value of these fixtures after they were taken away; not that the plaintiff can recover as such, the value of its machinery as a separate and distinct item; but it aids you in determining the main question in the case, to ascertain what the fixtures on this leasehold were and what was the purpose for which they might be used and what was their value in the market.] [5]

Verdict and judgment for plaintiff for $117,687. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Patterson, Sterrett & Acheson,* for appellant.—The market value of the leasehold is the measure of damages, Penna. R. R. Co. v. Eby, 107 Pa. 166, where the leasehold is improved with heavy machinery and fixtures which cannot be removed without loss to another location, the value of these to the tenant, or those taking title from him, for the unexpired term, as also the cost and depreciation in the event of removal, are elements

for consideration in estimating the amount of damage: McMillin Printing Co. v. Pittsburg, etc., R. R. Co., 216 Pa. 504.

As to the removal or wreckage value of the fixtures and machinery as an element of damage. It will be observed that this does not refer to the cost of removal to another site and the consequent deterioration of the property, but deals with the value of the property, severed from and sold away from the land, as an item for consideration in reaching the general result. Where no opportunity has been given to the tenant to remove, it is a matter for testimony and opinion as to what the property was fairly worth in its severed condition. If, however, the railroad company has given notice to the tenant of its proposed entry and has offered to the tenant an opportunity to sever and remove his property and fixtures, upon his failure to take advantage of the opportunity thus given him, he is held to have abandoned whatever property he may leave on the premises, and the railroad company is at most liable to him for such amount as they may receive therefor upon a resale thereof: Lyons v. Railway Co., 209 Pa. 550.

*John S. Ferguson*, for appellee.—The right of the appellee was the right to remain in undisturbed possession of the lease to the end of the term. The loss resulting from the deprivation of this right is what the appellee was entitled to recover: McMillin Printing Co. v. Railroad Co., 216 Pa. 504; Wilmington & Reading R. R. Co. v. Stauffer, 60 Pa. 374.

In a long line of decisions, the Supreme Court has recognized the fact that the market value of land is generally based upon its extent, the character of its improvements, its productive qualities, and upon sales of property in the vincinity: Reed v. Pittsburg, etc., R. R. Co., 210 Pa. 211; Cox v. Railroad Co., 215 Pa. 506; Pittsburg, etc., R. R. Co. v. Rose, 74 Pa. 362; Spring City Gas Light Co. v. R. R. Co., 167 Pa. 6; Wilmington & Reading R. R. Co. v. Stauffer, 60 Pa. 374; Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325; Western Penna. R. R. Co. v. Hill, 56 Pa. 460; Shano v. Bridge Co., 189 Pa. 245; McMillin Printing Co. v. Pittsburg, etc., R. R. Co., 216 Pa. 504; Getz v. R. R. Co., 105 Pa. 547.

OPINION BY MR. JUSTICE MESTREZAT, April 19, 1909:

By a lease dated April 1, 1891, Mary E. Schenley let to the executors of James Rees, deceased, an irregular shaped lot of ground fronting on Duquesne Way in the city of Pittsburg for the term of twenty years, for the annual rent of $1,250 for the first ten years, and $2,150 for the second ten years. The taxes and assessments on the premises were payable by the lessees, and they had the privilege of removing improvements erected by them at the termination of the lease. The interest of the lessees in the premises subsequently became vested in the Consolidated Ice Company, the plaintiff in this action.

At the date of the lease, there was upon the lot a two-story brick building occupying the whole premises, open in the interior and with a sort of gallery around and skylights above. The building had been used previously as a boiler works. The ice company erected a frame building on the premises, within and disconnected from the surrounding walls of the brick building, and in 1890 installed in the building all the machinery necessary to equip an ice manufacturing plant. It had a rated capacity of 155 tons of ice every twenty-four hours, and the product was disposed of in the district adjacent to the plant. The Pennsylvania Railroad Company, the defendant, having acquired the fee in the lot, filed its bond which was approved by the court, and on March 11, 1905, began condemnation proceedings to acquire the interest of the ice company in the premises. Before entry on the premises, the defendant, on May 24, 1905, notified the ice company to remove its improvements from the premises, but on June 5, 1905, the ice company advised the counsel for the defendant company that it would not remove any of the machinery and fixtures and that the defendant might dispose of the same as it saw fit. The defendant company thereupon, after advertising in the newspapers of the city of Pittsburg and seeking to find a bidder, sold the machinery and fixtures to a contractor for $2,800 for which the defendant is willing to account to the plaintiff.

The trial of the cause in the court below resulted in a verdict and judgment for $117,687 in favor of the plaintiff company, and the defendant has taken this appeal. The assign-

ments of error raise substantially but one question, and that is as to the correctness of the court's rulings on the measure of damages. The learned judge of the court below instructed the jury that the leasehold which was the subject of the condemnation proceedings was the land, the buildings and the fixtures constituting the ice plant, and that the loss sustained by the plaintiff company was the market value of its leasehold interest.

The defendant company alleges that the court erred in its rulings as to the elements of damage represented by the value of the machinery and fixtures in place, and by the removal or wreckage value thereof. The defendant concedes that the measure of damages in case of an ordinary leasehold is the amount that anyone would pay for the unexpired term over and above the rent and other charges; and that where the leasehold is improved with heavy fixtures and machinery, as here, the use value of the fixtures and improvements to the tenant for the balance of the term is also an element to be considered in ascertaining the value of the leasehold. The defendant company denies the right of the plaintiff company to recover the value of the machinery and fixtures in place, and contends that their only element of value was the use the plaintiff company could make of them until the term expired and their removal took place. The defendant further contends that the plaintiff company had abandoned its machinery and fixtures after it had notice and opportunity to remove them, and that the most it was entitled to receive for them was what the defendant company had sold them for.

The plaintiff was entitled to recover in this proceeding the value of its leasehold interest, including the use of the improvements it placed on the demised premises, for the unexpired six years of the term. Of course, this does not include estimated profits of future trade or business, or other supposed consequential injury: Pennsylvania Railroad Co. v. Eby, 107 Pa. 166. The plaintiff company was paying as a rental for the premises $2,150 per annum and the taxes on the property, but this rental did not include compensation for the ice plant. As between the lessor and lessee, the leasehold was simply the lot

and the structure thereon at the time the premises were let. The rental paid the landlord was compensation for the use of that property. Subsequently to the letting, the lessee constructed its ice plant with the express reservation in the lease of the right, but without the obligation, to remove it at the expiration of the term. Therefore, in estimating the damages sustained by the plaintiff company, the jury should consider not only what the leasehold proper was worth over and above the rental and other charges paid by the lessee, but the value of the leasehold as improved by the ice plant. In other words, the loss resulting to the plaintiff company is the difference between the value of the leasehold, as improved by the ice plant, for the unexpired term, and the rental and other charges payable by the lessee. This, as is apparent, would include the use of the fixtures and machinery by the tenant as well as the use of the demised premises for the residue of the term. The value of the leasehold proper for the unexpired term would be what the premises would be worth for any purpose for which they could reasonably be used over and above the rental and other charges payable by the lessee. To this must be added the use value of the machinery and fixtures until the expiration of the lease. These are not substantive elements of damage but are for the consideration of the jury in estimating the plaintiff company's loss by being deprived of the residue of the term. Clearly the plaintiff was not entitled to have considered in ascertaining the value of the leasehold or to recover as an element of damage the value of the machinery in place at the time of the institution of the condemnation proceedings. By the terms of the lease, the plaintiff company had the right, at the expiration of the term, to remove the machinery and fixtures placed on the premises by the lessee. They belonged to the plaintiff and were subject to its control and disposition, and if they had any value and the company so desired, it could have removed them when the lease was determined by the action of the defendant. The filing and approving of the bond did not prevent this. It did not deprive the plaintiff of the ownership of or the right to remove the property, and the defendant company disclaimed any inten-

tion to appropriate it and gave notice and an opportunity to the plaintiff to remove it from the Schenley premises. The appropriation by the defendant determined the lease, but it did not take the fixtures and machinery placed upon the demised premises by the lessee. Hence, it was error to allow the jury to consider the valuation placed by the witnesses on the fixtures and machinery in place as an element of value in estimating the loss sustained by the plaintiff by the appropriation of its lease.

The filing of the bond by the railroad company was not, as we have seen, an appropriation of the improvements by the company imposing liability for their market value. The title to the property was still in the plaintiff, and having received notice and an opportunity to remove it, the plaintiff company should have severed and disposed of it. However, as the defendant sold the fixtures and machinery and received the proceeds of the sale, it should account to the plaintiff for their value. It concedes its liability to the extent of the amount received. In determining the value, the jury should consider the fact that the plaintiff had the right to sever and remove the property, and that the cost or expense thereof should not be placed upon the defendant. The failure to exercise the right of removal and disposition of the property by the plaintiff required the defendant to dispose of it, and it is responsible to the plaintiff company only for the amount it received from the sale of the property after having made a proper and bona fide effort to dispose of it to the best advantage. The defendant alleges that it in good faith attempted to realize the best price for the property by advertising and making other efforts to secure purchasers. If the jury should find this to be true, then the amount which it received for the property would be the value of it for which the defendant would have to account to the plaintiff. If, on the other hand, the jury should be convinced by the evidence that the action of the defendant company was not such as to obtain for the property its fair market value, then the jury must find under the evidence what the value of the property was at the time the leased premises were appropriated by the company.

So far as the matters complained of in the assignments of error are in conflict with this opinion, the assignments are sustained, and the judgment is reversed with a venire facias de novo.