UNITED STATES of America

v.

**CERTAIN PARCELS OF LAND IN the CITY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, Samuel Miller, et al.**

No. 30468.

United States District Court
E. D. Pennsylvania.

Jan. 28, 1966.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward L. Snitzer, Stanley E. Gordon, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for Willie Greves Corp.

Francis X. Nolan, and Thomas L. Shannon, Jr., Philadelphia, Pa., for Samuel Miller.

WOOD, District Judge.

After a hearing at which Willie Greves Corporation was given an opportunity to prove its claim, if any, we make the following:

### FINDINGS OF FACT

1. The United States filed a complaint in condemnation and a declaration of taking on November 1, 1961, under 40 U.S.C. § 258a pursuant to authority delegated by the Secretary of the Interior. The interest condemned was taken for public use in development of the Independence National Historical Park for the benefit and enjoyment of the public.

2. The interest acquired according to the complaint was an estate in fee simple title in and to the said lands, subject to easements for streets, highways, alleys, sewer, gas and water pipe lines, telephone and power lines and other public utilities. The interest in issue herein was described in Exhibit A to the complaint as "All that certain lot or piece of ground with the buildings and improvements thereon erected * * * Together with all and singular the water rights and other rights, tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining."

3. On November 1, 1961, Samuel Miller was the fee owner of said premises situated at 201 Market Street in Philadelphia. Willie Greves Corporation was tenant in possession of said premises for

a restaurant, taproom and meeting hall, through an assignment on February 19, 1959, by the original lessee Joseph Raditz, who executed the lease with Miller on October 27, 1958.

4. An agreement of sale was entered into between Raditz and Greves on February 17, 1959, purporting to sell certain trade fixtures to Greves.

5. Clause 9(d) of the lease between Miller and Greves provided as follows:

"All alterations, improvements, additions or fixtures, whether installed before or after the execution of this lease, shall remain upon the premises at the expiration or sooner determination of this lease and become the property of Lessor, unless Lessor shall, prior to the determination of this lease, have given written notice to Lessee to remove the same, in which event Lessee will remove such alterations, improvements and additions and restore the premises to the same good order and condition in which they now are."

6. Clause 22 in the lease provided:

"In the event that the premises demised or any part thereof is taken or condemned for a public or quasi-public use, this lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor * * *"

7. The market value at 201 Market Street of the 21 trade fixtures in place was $4,337.00.

8. Miller replaced certain of the items included in Raditz's bill of sale with his own money or money from an insurance policy after a fire on the premises.

9. Willie Greves Corporation on or before December 8, 1962, removed all of the trade fixtures from the premises.

10. Greves Corporation did not install any of the trade fixtures for which claim is being made.

11. Greves Corporation did not prove ownership to any of the fixtures herein mentioned.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this case.

2. The law of Pennsylvania applies in defining the existence of a property right for which compensation must be made.

3. The lease between Miller and Greves was terminated on November 1, 1961, as a result of the condemnation clause and Greves had no compensable claim for the value of his leasehold.

4. Clause 9(d) of the lease duly assigned to the Greves Corporation for premises 201 Market Street from Joseph Raditz does not give the fee owner of the condemned premises the right to damages for the trade fixtures for which claim is made by Greves. The tenant had the right to remove his own trade fixtures if not condemned.

5. The stipulation between the United States and Miller does not bar Greves Corporation from making an additional claim from the United States for the value of its compensable items.

6. The fixtures involved herein were trade fixtures.

7. Trade fixtures are personalty in Pennsylvania as to everyone.

8. Trade fixtures are not part of the real estate when installed by the tenant when the tenant has the right to remove them and tenant has no right to compensation for his trade fixtures when his leasehold expired on the date of condemnation as the result of a condemnation clause in the lease.

9. Willie Greves Corporation is not entitled to compensation for the trade fixtures.

10. Miller is entitled to receive the money now deposited for him in the registry of the court.

## DISCUSSION

The United States filed a complaint in condemnation and a declaration of taking on November 1, 1961. Samuel Miller, owner in fee of the premises here in issue, received notice of all proceedings in this case. His lessee, Willie

Greves Corporation, received no such notice although counsel had entered appearance on its behalf on December 22, 1961. It was stipulated between Miller and the United States that $47,500.00 was just compensation for the premises. Of this amount $15,500.00 still remains in the registry of this court. Greves Corporation was denied any compensation on August 5, 1963, without a full hearing. The Circuit Court vacated the judgment of court and remanded with directions that Greves Corporation be given a further day in court at which time it would have an opportunity to prove its claim, if any.

## I
### The Applicable Law and Valuation.

■ A brief word about the law to be applied in determining whether trade fixtures are compensable as realty is necessary because of the diversity of opinion as to fixtures and not because of any dispute by the parties. Congress, of course, within constitutional limitations can define the extent of property taken when there is a federal condemnation. Absent such a mandate or an overriding federal interest, the federal courts should look to state law to determine what is realty and what is personalty. First, this should be so because there is no particular body of federal common law regarding fixtures and it would be rather futile to create one especially for eminent domain when there is a whole body of state law to which to look. Secondly, consistency within a state is required so that particular persons can provide contractually against eminent domain. Of course, state law will apply in determining relationships between particular persons as to ownership of property. United States v. Certain Property, Etc., 344 F.2d 142 (2d Cir. 1965).

## II

The primary legal argument of Miller is that the trade fixtures were not part of the realty under Pennsylvania law and thus not taken as part of the fee. This contention is denied by Greves who argues that if trade fixtures are (a)

physically attached to the realty; (b) would cost more to disconnect and remove from the realty than worth in place; and (c) would have caused material damage to the realty and the fixture upon removal are part of the realty despite their classification as between landlord and tenant. Moreover, Greves contends that the appraisers for the government specifically took into consideration the value of thirteen of the fixtures in determining what compensation was fair for the fee simple.

■ Trade fixtures are articles which are placed upon or attached to the freehold to conduct a trade or business on the premises. The law in Pennsylvania is clear as to trade fixtures erected by a tenant that they remain personalty as to everyone. The rationale enunciated by Chief Justice Horace Stern was as follows:

> "Such structures, placed by a tenant on demised premises for the purpose of carrying on his business, may be removed by him, or may be replevied or levied on by a writ of execution, during the term of the lease; being built on leased land and therefore on a chattel estate they are themselves chattels in regard not only to the lessor but to everyone else. The criterion is not one of physical annexation * * * " First Nat. Bank of McAdoo v. Reese et al., 356 Pa. 175, 179, 51 A.2d 806 (1947).

This was merely the enunciation of the prevailing law in Pennsylvania. We have found no cases where a tenant's trade fixtures in Pennsylvania have been considered other than personal property. Watts v. Lehman, 107 Pa. 106 (1884).

■ Thus, the trade fixtures were not a part of the realty and were not condemned by the United States even if their value after removal was slight. If the lease had terminated other than by condemnation, the only right which the tenant would have had would be to remove the fixtures to another location.

Greves contends that the Supreme Court of the United States has specifical-

ly decided that fixtures are compensable items. United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). However, in that case all the court decided was that fixtures were to be paid for if the leasehold interest of the tenant were partially condemned. The rationale as interpreted by United States v. Petty Motor Co., 327 U.S. 372, 379, 66 S.Ct. 596, 90 L.Ed. 729 (1946) was that in *General Motors* the lessee had to return to the leasehold after the Government's use or at least the responsibility for the period of the lease not taken rested with the lessee.

■ Greves has taken the position throughout the proceedings that the fixtures were condemned as of November 1, 1961, as the rule in New York and Washington, D. C.[1] would dictate. New York law regards the tenant's trade fixtures as real property in certain situations. United States v. Certain Property, 306 F.2d 439 (2d Cir. 1962). However, the rule in Pennsylvania differs from that of New York and specific federal cases are not authority for a determination by a federal court in Pennsylvania. Moreover, the Seventh Circuit took the position which we deem to be that which a Pennsylvania court would take, that fixtures may be considered only if the leasehold itself is compensable. United States v. 1.357 Acres of Land, 308 F.2d 200 (7th Cir. 1962). Under the condemnation clause of the lease, the leasehold came to an end on November 1, 1961. Had a leasehold interest been condemned in this case, Greves might have had a cause for compensation, although not in the sense in which it is presently viewing the matter. The Pennsylvania Supreme Court stated the manner in which the trade fixtures would be compensated if the leasehold were condemned:

"The value of the leasehold proper for the unexpired term would be what the premises would be worth

for any purpose for which they could reasonably be used over and above the rental and other charges payable by the lessee. To this must be added the use value of the machinery and fixtures until the expiration of the lease. These are not substantive elements of damage, but are for the consideration of the jury in estimating the plaintiff [lessee] company's loss by being deprived of the residue of the term." Consolidated Ice Co. v. Pennsylvania R. R. Co., 224 Pa. 487, 494, 73 A. 937 (1909).

Without this compensable leasehold, the removal and depreciation costs of trade fixtures are not compensable in Pennsylvania[2] and it can hardly be said that they have been condemned as part of the realty.

■ The fact that the United States appraisers may have considered certain of the trade fixtures in evaluating the realty is irrelevant so far as Greves is concerned. First, the legal position of the appraisers is irrelevant in determining whether there was a condemnation of the fixtures at the time of the filing of the complaint. Secondly, presumably the fixtures were evaluated because the appraisers probably believed them to be the property of the owner of the fee simple.

Were we to make an independent determination in this matter, we would conclude that certain trade fixtures should be compensable either because they are an integral part of the realty to which they are attached or that they are so attached as to be worthless after severance. The distinction based on whether there is a compensable leasehold seems artificial and based on medieval concepts. However, because Pennsylvania law has been pressed on us and we can see no alternative solution, we must decree that the items presently in issue are not compensable.

1. United States v. Seagren, 60 App.D.C. 183, 50 F.2d 333, 75 A.L.R. 1491 (1931).

2. Becker v. Philadelphia & Reading Terminal R. R. Co., 177 Pa. 252, 35 A. 617, 35 L.R.A. 583 (1896).

**260**

### III

Clause 9(d)

 It is the position of Miller and the United States that Clause 9(d) of the lease acted to transfer title to any of Greves's trade fixtures to Miller. Because of the strong presumption that a tenant has the right to remove his trade fixtures at the termination of the lease, the landlord has a heavy burden to show that title to the trade fixtures vested in him as the result of a contract. Matter of Lipschutz, 228 F.2d 290 (3rd Cir. 1955); Cattie v. Joseph P. Cattie & Bros., Inc., 403 Pa. 161, 168 A.2d 313 (1961); Lindsay Bros., Inc. v. Curtis Publishing Co., 236 Pa. 229, 84 A. 783, 42 L.R.A.,N.S., 546 (1912). Although the word "fixture" was not included in the leases in the Pennsylvania cases, it was so included in that in the *Lipschutz* case. There is no evidence in this case that the tenant's trade fixtures were to pass to the landlord at the end of the lease. The lease is a familiar form lease without any typewritten clauses referring to the fixtures. It does not seem to contain any reference to the trade fixtures at all. No evidence was adduced at the hearing tending to prove that any bargaining had been done by the parties relating to trade fixtures. Thus, we conclude that trade fixtures are not included within the word "fixtures" within the lease and they did not pass to the landlord at the termination of the lease.

### IV

In addition to proving his claim factually and legally, Greves in order to recover must have shown that he did not remove the trade fixtures or that their removal is irrelevant to his claim in this action. We accept neither position. Since Greves did remove the fixtures, he either waived any claim to compensation or he is entitled to only the difference between the value of the property in place and as removed. Because of Greves's apparent ignorance as to his actions legally, we choose the latter course as more, equitable, especially since the federal government was not particularly interested in the trade fixtures per se.

If Greves were entitled to compensation, he would have to account to the United States for the value of the items which he removed from the premises. United States v. Certain Property, 306 F.2d 439, 453 (2d Cir. 1962).

Counsel for Greves cited Dyer v. Commonwealth, 396 Pa. 524, 152 A.2d 760 (1959), which he considered binding in a federal court as to this very problem. However, this is a procedural problem and not one which substantially affects the relationships of any parties. The case is not binding.

Counsel may submit order.