## Luke Brooks *versus* The City of Boston.

Where the lessee of a store in Boston was prohibited, under certain penalties, by the terms of the lease, from making any alterations in the store without the consent c‘ the lessor, and, subsequently to the execution of the lease, the street was widened by the city authorities, it was *held*, that the city was not responsible to the lessee, for any damage occasioned by a delay on the part of the lessor to give his consent to the alterations rendered necessary by the widening of the street.

In an action for damages brought, in such case, by the lessee against the city, evi dence that his sales were less during the time when the street as widened, was being fitted for use, than in the corresponding season of the next year after the al teration had been completed, is not admissible, unless it is connected with other evidence tending to show that the diminution of business was in fact occasioned by operation of widening the street.

A city or town is not responsible in damages for the inconvenience and loss of busi ness occasioned to the abutters on a street, by incumbrances and obstructions placed in the street for the purpose of repairing it, or by opening a common sewer in the street.

This was a complaint to recover indemnity for damage oc casioned by the widening of a street in Boston.

At the trial in the Common Pleas, before *Ward* C. J., it appeared, that the mayor and aldermen of Boston, on the 12th of May, 1834, widened Elm street on the southerly side, and thereby took from the complainant a quantity of land and part of a store thereon, which were leased to him for seven years from the 1st of September, 1833, by a corporation called the Fifty Associates.

The complainant claimed damages for the taking of the land and for the expenses of repairing the store ; also for the loss of the rent of the whole store from the time when the land was taken until the store was made tenantable, in January 1835 ; and for the diminution of his business in a store, occupied by him and his partner, on the northerly side of the street, which was part of the same estate and was held under the same lease.

It appeared that by the terms of the lease, the complainant could not make any alteration in the southerly store, without forfeiting his lease, and losing the sum of $ 5500, expended by him in repairs and in the erection of new buildings, unless he previously obtained the consent of the lessors in writing : that they refused to give their consent until their claim against the city for the damages done to their reversionary interest was

settled , that a delay in making such alterations, was caused thereby ; and that the lessee had paid the rent for the whole term, in advance.

To support the complainant's claim for damages on account of the diminution of his business, occasioned, as he alleged, by the street being obstructed by bricks and stones, he offered evidence to show that the amount of his sales in July, August, September and October, 1834, was much less than in the corresponding months in 1835, after the alterations were completed and the obstructions in the street removed.

This evidence was rejected, because the store, in which the complainant carried on his business, was on the opposite side of the street and wholly disconnected from the land taken by the mayor and aldermen ; and because the evidence was speculative, in its nature, and furnished no certain ground for concluding that the complainant had lost or gained, it being uncertain whether or not, his sales were diminished, in 1834, by the obstructions in the street, or were increased, in 1835, by the street's being widened, and a general change in the state of business, or whether, if his sales in 1834 had been greater, he would have lost or made more money.

The complainant also introduced evidence to show, that a common sewer was opened in the street, in 1834

In regard to the claim of the complainant for compensation for the loss of the rent of the southerly store from the time when a part of it was taken until he obtained the consent of the lessors to make the necessary alterations, the jury were instructed, that he was entitled to compensation for the loss of the rent of the southerly store only for such a period of time as was reasonable and necessary for the purpose of putting the store into a tenantable state ; and that if he had hired the estate subject to unusual and unreasonable forfeitures, the city was not bound to indemnify him against losses incurred on that account.

The jury returned a verdict for the complainant, for a portion of the damages claimed.

The complainant excepted to the rulings and directions of the judge.

*Fletcher* and *Peabody* cited to the point, that the complain-      *June 17th.*

Brooks
*v.*
Boston.

ant was entitled to indemnity for the loss of the southerly store from the time when the land was taken till the consent of the lessors to the necessary alterations, was obtained, *Keeble* v. *Hickeringill*, 11 East, 574, note ; *Hayden* v. *Cabot*, 17 Mass. R. 169 ; *Harrison* v. *Sawtel*, 10 Johns. R. 242.

*J. Pickering* cited to the point, that the complainant was not entitled to indemnity for the loss of business, *Baldwin* v. *Calkins*, 10 Wendell, 167 ; [*Patterson* v. *Boston*, 20 Pick. 159.]

June 26th.

WILDE J. delivered the opinion of the Court. The complainant excepts to the decisions and directions of the Court of Common Pleas on two grounds ; 1. Because the jury were misdirected as to the complainant's claim of damages for the loss of the rent of his store from May 1834 to January 1835 ; and 2. Because material evidence tending to show the diminution and loss of the complainant's business by the alteration and widening of Elm street was rejected.

It was proved at the trial, that the complainant had a lease for years of the land taken by the city, and the land adjoining, on which his store stood ; that he had paid rent for the whole term in advance, and had erected new buildings thereon at his own expense : that, by the terms of the lease, he was not permitted to make any alterations in the store unless with the consent of his lessors, without forfeiting his lease, with an additional penalty ; and that his lessors refused to consent to any alterations.

On these facts the jury were instructed, that the complainant was entitled to a compensation for the loss of the rent of the whole store only for such length of time as was reasonable and necessary to repair the store ; and that the city was not holden to indemnify him against losses incurred by the refusual of the lessors to agree to the repairs and alterations required by the widening of the street.

These instructions, we think, were correct. It may be well doubted whether the consent of the lessors was requisite to authorize the complainant to make the repairs and alterations rendered necessary by an event unforeseen at the time the lease was made. It is not, however, necessary to decide this point ; for if the consent of the lessors were necessary, still we are of opinion, that the city is not responsible for any dam-

age caused by the refusal of the lessors to consent to the making the necessary alterations. Such refusal was unreasonable ; and the lessors are liable for all damages accruing thereby, or the complainant is without remedy. The refusal was the proximate and real cause of the damage by loss of rent ; and for this the city is not liable. The city is liable for the value of the land taken, the damage done to the land and buildings remaining, and the expenses of repairs, deducting the benefit of the alteration in the street ; but they are not responsible for any damage caused by the disputes and disagreements between the different owners of the land.

By a provision in the Revised Stat. *c.* 231, commissioners are authorized, when damages are claimed by any one entitled to an estate for life or for years, the remainder or reversion belonging to another person, to apportion the damages between them according to their respective interests, as shall be just and reasonable. But the city had settled with the lessors before this provision took effect ; so that no apportionment could be made between the different owners. Whether the complainant could claim a larger proportion of the damages by reason of the lessors' refusal to consent to the making the repairs, had that provision been in force before any settlement was made, is a question not raised by the facts reported. But if the city had settled with the reversioners, after the Revised Statutes had been in force, this question might have been material.

In support of the remaining exception it has been argued, that the evidence rejected was material and competent, as it had a tendency to prove that the damage sustained by the complainant by the diminution of his business in 1834, was caused by the alteration of the street. It is true, that this evidence, in connexion with the proof of other facts having a tendency to show that the diminution of business had been caused by the alteration in the street, might be competent evidence ; but the evidence rejected had no tendency to prove the cause of the diminution of the complainant's business. He only offered to prove the simple fact, that the complainant's amount of sales in the months of July, August, September and October in 1834, were much less than they were in the corre-

sponding months in 1835, after such alterations were completed and the obstructions in the street removed. Now this might have been caused by a general change in the state of business, or by the increase of the complainant's stock in trade, or from some cause other than the enlargement of the street. The evidence was therefore speculative, and would lead to no certain and satisfactory conclusion, but might nevertheless mislead the jury ; and, for these reasons, it was rightly rejected.

There is also another conclusive reason for rejecting this evidence. The complainant offered to prove, that in 1834, the street was incumbered with bricks and stones and rendered inconvenient for passing and repassing, and that a common sewer was opened in the street. And it appears, that the complainant alleged at the trial, that his loss of business was occasioned by the street being incumbered and obstructed as above stated. Now we think it quite clear that the city is not responsible for any loss thus occasioned ; no more than they would be for opening an old common sewer for the purpose of repairing or enlarging it, or for repairing a street, or for any other repairs which public safety or convenience might from time to time require. So that it appears by the complainant's own allegation, that his loss of business was caused by incumbrances and obstructions in the street after it was altered and widened, and for which the city is not responsible.

*Judgment of the Common Pleas affirmed*