## Pennsylvania Railroad Co. *versus* Eby.

1. Neither the Act of April 13th, 1846 (P. L. 320), nor the Act of March 17th, 1869 (P. L. 12), authorizes the Pennsylvania Railroad Company, upon the approval and filing of their bond to a lessor, to enter upon land in the possession of the lessee.

2. A tenant is an "owner or party interested," within the Statutes, entitled to security, before entry under the right of eminent domain can be lawfully made on his leasehold without his assent. For injury to his estate by reason of such unlawful entry, he may recover in trespass; and the subsequent giving of security by the railroad company, in the mode authorized by the Statute, will not deprive him of this remedy.

3. In such an action of trespass by a tenant against a railroad company:
   *Held*, that the record of a suit by the lessor against the company for his damages, containing the bond given by the company for the security of the lessor's damages, was not admissible in evidence to show that the company had the right to appropriate the tenant's property; but that the record of an action of ejectment by a third party against the lessor for the land leased, and a disclaimer filed by the lessor for part of said land, were admissible as affecting the measure of damages suffered by the tenant.

4. As to the measure of damages, the plaintiff was properly allowed to prove the value of his leasehold over the rent paid therefor, but was then permitted to say: "If I had stayed on there, rather than moved away, it would have paid me $1,000 a year."
   *Held*, that the latter testimony was impertinent matter, in the nature of an estimate of future profits, which should not have been submitted to the jury.

5. The plaintiff's calculation of damages, which was allowed to go out with the jury, contained an item of "damages for being deprived of lease for two years." The company had filed a bond about six months after entering the premises, and the court had ruled that any damage accruing after the filing of said bond must be recovered under it, and not in the action of trespass.

*Held*, that it was error to send out said item with the jury.

6. Where the purpose for which certain evidence is offered is not asked for or stated, if the same is competent for any purpose, it is error to reject it, even though it may be incompetent for some other purpose.

7. Although a corporation which enters upon property without right is liable for punitive damages, yet where the jury are satisfied that the entry was made in good faith by the corporation, in the belief that it had the right to do so, the jury should not impose such damages.

June 7th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Dauphin county:* Of May Term, 1884, No. 3.

Trespass *quare clausum fregit*, by W. H. Eby against the Pennsylvania Railroad Company, to recover damages for the entry by the defendants on a certain coal yard leased by the plaintiff, and appropriating part of the same for railroad purposes.

On the trial, the following facts appeared: In January, 1880, one George W. Harris was, or claimed to be, owner of a strip of land in the city of Harrisburg, about 1200 feet long and 50 feet wide. The land was bounded on the east by the Pennsylvania canal and on the west by lands of the Pennsylvania Railroad Company. Harris rented about 300 feet of the southern end of this strip to W. H. Eby, the plaintiff, who erected sheds and bins thereon, made roads through it and used the property for a coal yard, paying an annual rental of $200.

The Pennsylvania Railroad Company had numerous tracks north and south of Harris' land, and two, running along part of it. In January, 1880, they concluded to place additional tracks thereon, and being unable to agree with Harris on damages, tendered him a bond for $20,000, which he refused to accept, and the same was filed January 28th, by order of court. The company thereupon began to lay tracks and on February 3d, while Eby was in Washington, twenty-five men employed by the company entered upon the land occupied by him, cut off a strip about fifteen feet wide from his coal sheds and bins, moved the coal out of their way, tore up his roads, filled the space in with ashes and cinders and laid down their tracks.

The company tendered no bond to Mr. Eby before entering his premises, but filed one on September 3d, 1880, in the sum of $1,000, and on November 23d following, he brought this suit for damages.

The defendants offered in evidence the record of a case by Harris against them for his damages, and also the bond for $20,000, given by them to him, and cited the Act of April 13th, 1846, (P. L. 320) under which said bond was given, stating that the offer was made for the purpose of showing that they had the right to take and appropriate the land in question after having given security available alike to Harris or any one claiming under him. Objected to as being evidence of matters occurring between parties other than the plaintiff, who was known to the defendants to be the owner of the property, within the purview of the law. Objection sustained and evidence rejected. Exception. (First assignment of error.)

Defendants also offered the record of a pending action of ejectment, by the Pennsylvania Canal Company against Harris for part of the ground which was the subject of the present suit; also a disclaimer, dated February 6th, 1883, filed by Harris, of all right and title to the ground covering thirteen feet from the canal and embraced in the land leased to Eby. Objected to as irrelevant, and as not a record of any proceeding between the parties to this suit. Evidence rejected on the ground that it proposed to set up an outstanding title in a third party as a justification of defendants' trespass. Exception. (Sixth assignment of error.)

The plaintiff was asked—" what was the value of your lease as you made it with Mr. Harris in 1879, under which you put up improvements, as you have testified ?" Answer. "If I had stayed on there rather than moved away, it would have paid me $1,000 more a year." Defendants' counsel objected to the answer and moved that it be stricken out. Motion refused and answer admitted. Exception. (Eighth assignment of error.)

Defendants submitted, inter alia, the following points :

1. " The action of the court, in approving the bond tendered to the plaintiff, was an adjudication that everything had been done entitling the company to have the bond filed ; and any remedy the plaintiff has is under the statute and not by common law action."

Answer. " That is copied out of a decision of the Supreme Court and it is the law of the case in which it was delivered. But the law as laid down by any court is the law simply of the case to which it applies ; and that does not apply to this case. So far as this case is concerned the plaintiff can recover

in this case all damages to which he is entitled which accrued prior to the date of the filing of the bond, to wit, the 1st of September, 1880." (Third assignment of error.)

2. " The defendant is only liable, if at all, for the actual damages sustained by the tenant during his lease."

Answer. " To that we say that if the jury, from the evidence, find that the defendant acted recklessly and with a wanton disregard of the rights of the plaintiff, they may go beyond the measure of damages laid down in this point. We instructed you fully as to that in our general charge." (Fifth assignment of error.)

In the general charge the court instructed the jury, inter alia, as follows:

" In this case no bond was tendered or filed. There is no evidence in the case whatever that there was any bond tendered or filed in the beginning. We will come in a moment to the filing of it afterwards. That being the case we are bound to say to you as a matter of law that this company had no more right to go on to these premises at the time they did, and to do the acts which the testimony shows they did (whatever you find them to be) than you had or I had, or any other person had. They had no rights there whatever. They were trespassers. (Second assignment of error.) . . . . . In the first place we say that the plaintiff is entitled to recover all the damage that they did him prior to the first of September. And we further say to you that if you find from the evidence that the conduct of the defendants in coming there with that force of men (however few or many there were you are to judge from the testimony) that the conduct of the defendant in coming there without any previous notice, without asking the leave of the plaintiff, putting that force to work there, cutting down his shed, taking possession of the premises, and doing the other acts that were done, if you find that that was a reckless and wanton interference with plaintiff's rights of property, we say to you that you are not confined, in estimating the damages, to the mere money value of the actual cash damages that were done him. One person has no right to invade the property of another, to take possession of it and use it as he pleases, and especially has he no right to do so with an overpowering force which the other party could not resist. (Fourth assignment of error.) . . . . . It is also claimed on behalf of the defendants here that the evidence shows that the plaintiff, Mr. Eby, consented to what was done, acquiesced in what was done, said he was satisfied with what was done; and that therefore he had no right to recover. That is, in the first place, a question for you to ascertain whether he did acquiesce, to ascertain whether

they asked his leave or not, to ascertain whether he was there to acquiesce or not. If you find that they did anything that they would not have done except with his consent, you may take it into consideration. It would tend, at least, to show that they were not acting in a reckless manner and in disregard of his rights, if they did only what he agreed that they should do if you find that to be the case. But if anything he said or did was after he had done this (unless they show that they gave him some consideration for saying that, unless they show that they made some bargain or agreement with him and paid him some consideration for being satisfied) we instruct you that, even if he did say that he was satisfied afterwards, it amounts to nothing if there is no consideration for it, if you do not find that there was. We will say he would not be bound by it—in other words, if you do not find that there was a consideration." (Seventh assignment of error.)

Plaintiff was allowed—under objection—to send out with the jury a "calculation of plaintiff's claim for damages," containing the following item: "Damages by being deprived of lease for two years from April 1880 to May 2d, 1880—$1,600." (Ninth assignment of error).

Verdict for plaintiff for $2,596—afterwards remitted to $2,000—and judgment thereon. Whereupon the defendants took this writ, assigning for error the rejection and admission of evidence as above noted; the refusal of their points; the parts of the general charge cited, and the action of the court in allowing the said item in the "calculation of damages" to go out with the jury.

*Hall & Jordan* for plaintiffs in error.—Under the powers conferred on the company by the Acts of April 13th, 1846 (P. L. 320), and March 17th, 1869 (P. L. 12), the filing of the bond for $20,000 was all the security necessary both for Harris and Eby. The bond enured to the benefit of both. The fund took the place of the land, both parties were relegated to it, and the relation of landlord and tenant thereby extinguished: Dyer *v.* Wightman, 16 P. F. S. 425. It was error to leave the question of vindictive damages to the jury. There was no evidence of malice on the part of the company: Rose *v.* Story, 1 Barr 190; Harvey *v.* Thomas, 10 Watts 63; Pittsburgh Southern Railway Co. *v.* Taylor, 8 Out. 306. The offer of the record in the ejectment suit by the Canal Co. *v.* Harris, and of the disclaimer, was not made in justification of the trespass, but as affecting the damages. If Harris did not own the land when he leased it, neither he nor Eby was entitled to damages. After

the company entered upon his land, Eby expressed his satisfaction with the way the work was done, and thus waived his right to the prepayment of damages: Mills on Em. Dom. p. 173. Plaintiff below was permitted, by the answer referred to in the eighth assignment, to give evidence as to prospective profits, which is expressly prohibited by the Supreme Court in Dyer v. Wightman, supra. It is error to permit a jury to take out a statement made by either party containing items as to which no evidence was offered: Frazier v. Funk, 15 S. & R. 26; Morrison v. Moreland, 15 S. & R. 61; Hall v. Rupley, 10 Barr 231.

*Wallace De Witt* and *McCarrell* (with whom was *Fleming*) for defendant in error.—Tenants are such owners as are entitled to the security necessary to be given, under the law, before entering leaseholds: Turnpike v. Brosi, 10 Harris 32; Frost v. Earnest, 4 Wharton 91; North Pa. R. R. Co. v. Davis, 2 Casey 238; Workman v. Mifflin, 6 Casey 362; Dyer v. Wightman, 16 P. F. S. 427. Without the tender and approval of a bond to the tenant the entry is trespass, for which an action of trespass q. c. f. will lie: Dimmick v. Brodhead 25 P. F. S. 466. The bond given to Harris was not available to Eby. He could not recover from the railroad on the face of it, and the relation of landlord and tenant would not enable him to recover from Harris. There was no good reason given why the company took possession of the premises in such a summary and unlawful manner. That more than mere compensatory damages may be given by the jury in case of a reckless and wanton trespass is well settled : Amer v. Longstreth, 10 Barr 145; Dennis v. Barber, 6 S. & R. 420; Nagle v. Mullison, 10 Cas. 48; Neiler v. Kelley, 19 P. F. S. 403. The answer of the defendant in error set out in the eighth assignment was responsive to the question and relevant. The injury done to him as lessee by the taking of his land is properly measured by the worth of said land to him, at the stipulate rents, for the residue of the term: Railroad v. Davis, 2 Casey 241.

Mr. Justice TRUNKEY delivered the opinion of the court October 6th, 1884.

Neither the Act of April 13th, 1846, nor the Act of March 17th, 1869, provides that the tender of a bond to and acceptance by the lessor, or the approval of a bond to the lessor by the proper court, authorizes the Pennsylvania Railroad Company to enter upon land in possession of the lessee. By the former Act, before land can be taken the bond must be made " to the party claiming the damages," and by the latter to the " owner or owners thereof or parties interested therein." Eby

was in actual possession, and that was notice to the company of his interest in the land. A tenant is an owner or party interested, entitled to security as the statute provides, before entry can be lawfully made on his leasehold without his assent: North Pa. R. Co. *v.* Davis, 26 Pa. St. 238. Where a company enters upon land without permission, and without payment of damages or security therefor, the person having the right of possession may recover in ejectment whether he be the absolute owner, or owner of an estate for years. Upon like principle such owner may recover in trespass for an injury done to his estate under similar circumstances. The subsequent giving of security, in the mode authorized by statute, will not deprive the injured party of his appropriate remedy for the trespass. There is no error in the rulings complained of in the first three assignments of error.

Nor can the fourth and fifth assignments be sustained. No evidence was admitted that before the trespass the defendant had given a bond to anybody. The offer of the record at No. 52, April Term, 1880, containing the bond that had been given to Harris, was for the purpose of showing that the defendant had the right to appropriate the property, not to show good faith for the purpose of repelling punitive damages. A corporation vested with the right to take private property for public use, after payment of damages or giving security therefor, has no right to touch it before. Where it enters upon property without right, if liable only for actual damages, it can evade the law with impunity. In this case there is no evidence of wantonness or malice beyond that implied from a taking and appropriation without right. Nor is there evidence that the plaintiff assented to the taking. At most the evidence shows that he was satisfied with the manner in which the work had been done, not with the act of taking his property. Had the defendant shown that a bond had been given to the landlord in the belief that it was security also for the tenant, and that the entry was accordingly in good faith, the jury ought not to impose punitive damages; yet the fact would be for the jury. We are not convinced that there is error in the instructions relative to damages.

Had the record referred to in the sixth assignment been offered for the purpose of showing an outstanding title in a third party as a justification of the trespass, it would have been inadmissible. The purpose of the offer was not stated, and it was unnecessary to state it, unless asked by the opposite counsel or the court. Hence, if it was competent for any purpose it was error to reject it: Richardson *v.* Stewart, 4 Binn. 198 ; Benner *v.* Hauser, 11 S. & R. 352. As the cause was tried, a material question was the value of the leasehold

from the date of the trespass to the date of approval of the bond on September 1st, 1880. If Harris had no title to a part of the leased land along the canal, as shown by the disclaimer filed in the ejectment at the suit of the Pennsylvania Canal Company, the offer was pertinent. There is testimony that if the Canal Company owned the strip, the leasehold was not worth very much. Though the trespass was on that part of the land for which Harris had title, evidence was received and submitted tending to show that the whole leasehold was nearly destroyed, and Eby claims that because of the injury he was compelled to abandon the property. The fact that a third party owned a valuable part of the land would likely affect the market value of the lease, and evidence of the outstanding title is material in arriving at the amount of actual damage. The Pennsylvania Canal Company commenced the suit against Harris before Eby obtained his lease, and there is no apparent equity in the claim that either Harris or Eby could recover damages for what belonged to another party.

The court properly ruled that with respect to the measure of damages it was competent for the plaintiff to prove the value of the leasehold interest over the rent received. But immediately following that ruling the plaintiff was permitted to say, " If I had stayed on there rather than moved away, it would have paid me one thousand dollars a year." If the question was so framed as to elicit that answer it was improper; and if not so framed, impertinent matter injected into the testimony by the plaintiff as a witness ought not to be submitted to the jury. The stenographic report shows promptness on the part of defendant in objecting to the answer, and it ought to have been as promptly stricken out. The principle which had just been ruled by the court did not involve the opinion of the witness as to the profits of his business had he remained two years. It was competent to prove the market value of the leasehold by the opinion of witnesses in the same manner as it would be the value of other property. That value is what the leasehold was worth—it was worth to the plaintiff the same sum as it was worth for sale and transfer, and the mode of ascertaining the sum is by testimony of witnesses upon its market value. If by reason of the taking of the property or its destruction the plaintiff was specially injured he is entitled to compensation for such injury, as for the time necessarily required in removing and the expenses of such removal, and for other loss directly resulting from the defendant's act. That does not include estimated profits of future trade or business, or other supposed consequential injury. And compensation will not be given for the mental suffering of a party who would rather have stayed on the premises than have moved away.

The reason for sending out a statement of claim with the jury in an action upon contract may apply with like force in an action of trespass, as when the damages claimed in trespass include the value of a number of things injured or destroyed. It was said by Justice GIBSON "that the court ought to see that what purports to be a mere statement of particulars be so in fact; that it be subservient only to purposes of calculation, and contain no item of which at least evidence has not been given:" Frazier *v.* Funk, 15 S. & R. 26. The statement in this case contained an item for "damage by being deprived of a lease for two years from April, 1880, at $800 a year." Explicitly the court had charged that if the plaintiff had any claim for loss accruing from the right to be tenant of the place after the 1st of September, 1880, he could recover in a different form, under the bond filed of that date, and not in this action. Then the claim in the statement was misleading instead of aiding. There was indeed evidence of the value for two years, and, therefore, the greater danger that the written statement would lead the jury from the oral charge. It seems from the opinion on the motion for new trial that the learned judge did not look at the calculation, and has never seen it, although it was objected to as not sustained by the evidence. Doubtless, had he looked at the paper it would not have gone out with the jury. An item which the jury shall not consider should be omitted as if not proved. It was the duty of the counsel who objected to the statement to point out the items to which he objected, if requested; but he was not so requested, and it does not appear that he had the opportunity.

The sixth, eighth and ninth assignments must be sustained.

Judgment reversed, and venire facias de novo awarded.