## Iron City Automobile Co., Appellant, *v.* City of Pittsburgh.

*Eminent domain—Municipalities—Streets — Change of grade — Leasehold interest—Damages—Measure of damages—Charge of court.*

1. The measure of damages for injury resulting to an abutting property from the change of grade of a city street is the same whether the plaintiff be a tenant for years or an owner in fee; it is the difference between the value of the property before and after the injury.

2. Where a leasehold has been affected by the change of grade of a street, the values involved may be shown by opinion testimony, but a plaintiff is not restricted to this class of evidence.   He may prove the various elements directly entering into and affecting the value of the remainder of his term; which, however, must not be assumed or speculative, but such as it is reasonable to assume would be taken into account by a prospective purchaser.

3. While in such a case the property interest of the tenant is to be estimated without regard to his personality, and without consideration of the actual state of his business or the profits derived therefrom, if the leasehold is one which because of certain peculiar qualities in and of itself actually produces a revenue or enables the tenant directly to make a regular saving in the conduct of his business aside from the results of his personal management, then these are elements which may be taken into account in fixing the value of the term.

4. The tenant may show in such case that by reason of the public improvement the rental value of the premises had suffered a loss

or depreciation which, owing to the fact that the actual rent must remain as theretofore, necessarily would affect the market value of his leasehold.

5. In such case the mere presence of a provision in the lease that the landlord has the right to dispossess the tenant at any time upon a short notice, while an element for consideration, will not defeat the right of recovery by the tenant if he proves a depreciation in the value of his leasehold interest.

6. The tenant in such case is not entitled to compensation for indirect injury to his trade, or for loss of profit suffered during the time occupied in making the public improvement, recovery being restricted to the direct and permanent effect of the physical injury to the demised premises upon the value of the balance of the tenant's term; and if the completed improvement permanently interferes with access to the leased property the jury may consider such fact as an element of damage affecting the value of the leasehold, and in order to show the extent of such interference it is permissible to prove the falling off of trade or custom directly attributable thereto.

7. In an action by the owner of a term of years in a property used as a public garage to recover from a municipality for damages alleged to have resulted to the leasehold interest in consequence of the change of grade of the city street on which the property abutted, a verdict for the defendant was sustained where the only damages proven by the plaintiff were the temporary loss of profits due to the obstruction of the demised building while the regrading was going on, and there was no evidence tending to prove a permanent diminution in the market value of the leasehold, or an apparent permanent falling off of custom due to the completion of the improvement, or that plaintiff's actual physical possession was disturbed, or that the market value of its leasehold interest was any less after the completion of the improvement than before, or a depreciation in the rental value of the property affecting the market value of the leasehold, especially where there was evidence to the effect that the leasehold was of greater value after than before the improvement, the increased value being due to the improvement.

8. In such case the court did not err in charging (1) that loss of profits must be excluded as an element in fixing plaintiff's damages, but that it is proper to consider the value of the leasehold on the day the work began as unaffected by the improvement, and what the leasehold was worth as affected by it; (2) that no allowance was to be made for inconvenience or interruption of business during the period occupied in making the improvement; (3) that any relevant facts might be considered by the jury in determining the aggregate diminution in value of the leasehold; (4) that if the

residue of the leasehold was of greater value after the entry by the city and the interruption of the right there has been no damage and there could be no recovery.

Argued March 16, 1916. Appeal, No. 218, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Oct. T., 1913, No. 1248, on verdict for defendant in case of Iron City Automobile Company v. City of Pittsburgh. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Appeal from award of board of viewers.    Before REID, J.

The facts appear by the opinion of the Supreme Court.

Verdict for the defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and in entering judgment on the verdict.

*W. K. Jennings,* with him *D. C. Jennings,* for appellant, cited: Coons v. McKees Rocks Borough, 243 Pa. 340; Ebberts v. Edgewood Borough, 243 Pa. 595; James McMillan Printing Co. v. Pittsburgh, Carnegie & Western R. R. Co., 216 Pa. 504; Kersey v. Schuylkill River East Side R. R. Co., 133 Pa. 234; Ehret v. Schuylkill River East Side R. R. Co., 151 Pa. 158; Pittsburgh, Va. & Charleston Ry. Co. v. Vance, 115 Pa. 325.

*H. M. Irons,* with him *Charles A. O'Brien,* for appellee.—The rule as to the measure of damages for injuries to property resulting from the change of grade of a city street is the same as to the tenant in fee, for life, or for years: Philadelphia & Reading R. R. Co. v. Getz, 113 Pa. 214.

Loss of profits cannot be included as an element of damages: James McMillan Printing Co. v. Pittsburgh, Carnegie & Western R. R. Co., 216 Pa. 504; Jones v.

Bangor Borough, 144 Pa. 638; Philadelphia Ball Club, Ltd., v. Philadelphia, 192 Pa. 632.

No claim for damage can be made for inconvenience, expense or loss of business during the progress of a municipal improvement: Chicago Flour Co. v. City of Chicago, 243 Ill. 268 (90 N. E. Repr. 674); Lefkovitz v. Chicago, et al., 142 Ill. App. 27; In re Board of Water Supply of City of New York, 130 N. Y. Supp. 997; Stadler, et al., v. Milwaukee, 34 Wis. 98; Brooks v. City of Boston, 36 Mass. 174; Northern Transportation Co. of Ohio v. Chicago, 99 U. S. 635.

OPINION BY MR. JUSTICE MOSCHZISKER, May 1, 1916:

This is an appeal by the plaintiff from a judgment entered on a verdict for the defendant, in a case involving the exercise by the latter of the right of eminent domain. The City of Pittsburgh regraded all thoroughfares in a neighborhood known as the "Hump District"; the plaintiff was a subtenant of certain premises located in a street affected by the change of grade; its property had a frontage of 60 feet, and the cut in the grade at this point ran from 24 inches at one end of its building to 2 inches at the other, although, during the course of the improvement, there was a temporary excavation of greater depth. The plaintiff had a verbal lease from year to year, with an obligation to vacate at any time upon three months' notice; the particular yearly period here involved ran from April 1, 1913, and, before renewing its lease for that term, the plaintiff knew the regrading was to take place in front of its property. The work which affected the premises in question commenced early in April, 1913, and continued for about four months; during this time the city "put posts up along the curbstone and nailed two beam planks up on those posts, completely shutting off the access (from plaintiff's property) to the street"; this obstruction was necessarily incidental to the regrading, but, since the plaintiff conducted an automobile garage, the operations in

connection with the public improvement effectively interfered with its trade, and materially reduced its profits, during the progress of the work. At trial, the witnesses for the plaintiff took the average of its business in previous years and deducted from the figure thus arrived at the financial results during the year of the regrading, showing a loss of about $5,000.00; this they claimed to be the damage which the plaintiff was entitled to recover against the city. Some of these witnesses spoke of the plaintiff's alleged loss as a reduction in business, but others frankly referred to it as a loss of profits; it plainly appears, however, that all of them had in mind the idea that the plaintiff was entitled to recover the profits which it probably would have earned, had its business not been interfered with, during the four months when the regrading was taking place; and they placed their estimate of the alleged depreciation in the leasehold value exclusively upon that basis.

The trial judge ruled, on the admission of evidence, that "loss of profits" must be excluded as an element in fixing the plaintiff's damages. In this connection, he said: "You are permitted to state what the value of this leasehold was on the day the work began there, at or about April 6, 1913, as unaffected by the improvement ......, and you are permitted to state what the leasehold was worth on the 8th of August, as affected by the improvement; was it worth more or was it worth less?" The expert witnesses for the defendant adhered to the rule thus enunciated, and testified that the improvement had not depreciated the value of the plaintiff's leasehold interest, stating that, because of its short term and uncertain tenure, it would at no time, and under no circumstances, command a premium in the market, that its value was the amount of the rent ($300.00 per month) and no more, both before and after the regrading. Some of these witnesses went further and said the improvement was of a character that tended to, and actually did, bring many more automobiles into the neighborhood

than theretofore, and that, in their opinion, this so favorably affected the value of the balance of the term under the lease as to more than offset any temporary inconvenience suffered by the plaintiff during the period of regrading.

In submitting the case to the jury, the trial judge charged: "The value of the leasehold as it stood April 1, 1913, unaffected by the improvements, must be taken, then the value of the leasehold as it stood August 1, 1913, as affected by the improvement, must be taken, and the amount which would represent the diminution in value thus ascertained, is the sum which you should allow this plaintiff, if you allow it any compensation." After this, the jury were told they were not to allow as separate items of damage anything for "inconvenience, interruption of business or loss of profits" during the period occupied in making the improvement; but that any relevant fact, properly proved, might be considered by them "in determining the aggregate diminution in value of this leasehold." The trial judge then went on to say: "Now if, upon the completion of this work on August 1, 1913, the residue of that leasehold, the unexpired term, the end of the lease year was of greater value than it had been before the entry by the city and the interruption of the right, then there can be no recovery at all in this case, because you can readily see that there was no damage." He further said: "The same principle is to be applied as if the owner of the property, upon which this leasehold is situated, the owner in fee, had complained of the injury to his property by reason of the grading, and the cut made in front of it; and the final test in this case would be—while he may have been damaged to some extent by the cutting, and the interruption of the access to his property, yet, if, after the cutting was done and the whole scheme completed, his property was more valuable than it had been before, he could not be allowed any compensation in damages. So in this case the same rule applies. If, notwithstanding the interruption in

the use and enjoyment of the demised premises for the period from April 1, 1913, until August 1, 1913, after the work had ceased on August 1, 1913, that property or leasehold estate was more valuable than it had been before, in spite of these interruptions, it follows there can be no recovery, and your verdict should be for the city. Whether it was or not is one of the questions you are to determine, and as you may determine that question you should render your verdict."

The above quoted and recited instructions reflect the attitude on the law assumed by the court below throughout the trial of the case; and the various specifications of error consist of complaints in relation thereto, excepting four which deal with rulings as to the competency of certain witnesses. We have repeatedly stated that the question of the qualification of a witness called to prove value is primarily for the trial court, and that we will never interfere with rulings in reference thereto unless manifestly erroneous; in the present instance we find no such error. The other, and bigger, question called to our attention by the appellant's assignments, concerning the measure of damages and the proofs relevant thereto, is one as to which there seems to be some confusion of thought, or, at least, of expression, in our cases.

In James McMillin Printing Co. v. Pittsburgh, Carnegie & Western R. R. Co., 216 Pa. 504, 510, Mr. Justice FELL said: "Whether in an action by a tenant whose leasehold interest has been taken......losses directly resulting from interruption of business can be considered, is a question on which the decisions are not harmonious. ......Market value is an unsatisfactory test of the value to a tenant of a leasehold interest......because the lease rarely has any market value......The value of the right he is forced to sell cannot ordinarily be measured by its market price, for there is no market for it, nor can it always be measured by the difference between the rent reserved and the rental value......" While suggesting these thoughts, yet, in the case just mentioned, we made

no actual ruling which represented a change in or an advance upon anything that had gone before. The real point therein was whether the tenant could recover the cost of removing certain machinery from the condemned property, and we said that, since the parties had tried the cause in the court below upon the theory that the cost of the removal of the machinery constituted the chief measure of damage, the appellant "should not be heard to question its correctness"; so the case really sheds little or no light upon the subject now before us. In the same book, at page 512, however, we find reported Shipley v. Pittsburgh, Carnegie & Western R. R. Co., where also the opinion was written by Mr. Justice FELL; there the plaintiffs were lessees of a building with an unexpired term of 16 months, which was appropriated by the defendant. We said that, while testimony as to the value of the tenants' fixtures and the reasonable cost of their removal was admissible, yet these could not be proved "as separate items for which a recovery could be had, but as evidence of the value of the right of undisturbed possession to the end of the term which had been taken from the plaintiffs." This case is also interesting because of a ruling therein to the effect that a clause in the lease requiring the tenant to vacate at any time upon ten days' notice would not defeat a right of recovery where no such notice had been given by or on behalf of the landlord prior to the appropriation of the demised premises.

In Philadelphia & Reading R. R. Co. v. Getz, 113 Pa. 214, 218, we said: "It is a rule of law well settled in this State that a tenant for years is the owner of an estate in the land, and is entitled to compensation for an injury done......., according to his interest...... Whether the assessment of damages be to the tenant in fee for life, or for years, the rule as to the measure of damages is precisely the same—What was the value of the property, that is to say, the tenants' interest therein, unaffected by the injury? What was its value as affected

by the injury? The difference is the true measure of compensation. The damages must be measured according to the market value for any useful purpose"; and we added, "The determination of the lease as an estate in the land was of course to be estimated upon the residue of the current year only." In both the Getz and McMillan cases, supra, the tenant was allowed to recover the expenses of the compulsory removal of machinery; we did not, however, permit this as a separate "item" of damage, but merely as "a proper element" to be considered in fixing the value of the leasehold. In other words, our underlying thought appears to have been: if a purchaser had appeared upon the scene to take over the lease, the fact that the holder thereof would be obliged to remove the business with the machinery to another location would, of course, cause the prospective lessee to diminish his bid for the balance of the term accordingly; hence, the cost of removal and the depreciation in value of the machinery were proper elements for consideration and deduction in measuring the value of the lease. This not only explains the Getz decision, but many other like cases.

Philadelphia Ball Club, Ltd., v. Philadelphia, 192 Pa. 632, is an important case in connection with the present appeal. It involved a claim by a tenant for damages to its leasehold interest, caused by a change of grade. Early in the opinion (p. 640), we direct attention to Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411, 422, which lays down this rule: "The jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded; they are to value the injury to the property without reference to the person of the owner or the actual state of his business, and, in doing that, the only safe rule is to inquire what would the property, unaffected by the obstruction, have sold for at the time the injury was committed? What would it have sold for as affected by the injury? The difference is the true measure of compensation." We

there held that the rule just quoted applied to the case before the court, and said, inter alia, that, (1) "only the difference in value........before and after the injury was inflicted could be considered," (2) "the time at which this difference of value was to be estimated was immediately after the injury was completed," (3) "in no event could there be any recovery for loss of profits," and, more specifically, we said (p. 648) : "It is a fundamental proposition that the valuation of the property affected must be made immediately before and immediately after ......the injury is inflicted; the difference in those valuations is the measure of the damages......In the present case the change in the grade of the streets was made in August, 1893, and the value of the leasehold at that time, as contrasted with this value in the spring of 1892, when the work was commenced, must represent the damages to which the plaintiff is entitled." See also Campbell v. Philadelphia, 230 Pa. 516, for a more recent ruling to the effect that the "proper test of the measure of damage is the difference in value of the leasehold estate before and after the change of grade," and Uhler v. Cowen, 199 Pa. 316, 321, where we say, "The measure of the tenant's damages......is the value of the term subject to the rent."

In Becker v. Philadelphia & Reading Terminal R. R. Co., 177 Pa. 252, 258, 261, we point out that "the new Constitution (of 1874) made no change in the character of property for which damages could be recovered," and say : "It merely enlarged the right of recovery from taking, to injury or taking." In addition, for the principle that "profits of business cannot be recovered in condemnation proceedings," we there cite the Thoburn Case, supra, and Cobb v. Boston, 109 Mass. 438, where it was held that, "in assessing the value of a leasehold estate, damage to the business of the lessee and his good will is not to be included......the only question being as to the value of his unexpired lease, and not as to the profits of his business."

In A. R. Justice & Co. v. Philadelphia, 169 Pa. 503, the tenant had taken his lease after the passage of an ordinance providing for the widening of the street upon which the demised premises were situated; nevertheless, we permitted a recovery of damages caused by the demolition and reerection of the front of the leased building. The reporter's notes in this case indicate many separate items claimed by the plaintiff, but there is nothing to show which of these the trial judge permitted, or to indicate that he allowed any of them except as an element to be considered in appraising the value of the leasehold. However that may be, on appeal, the only complaint was that the court below had refused binding instructions for the defendant; moreover, the verdict was for but one-half of the plaintiff's claim, and this indicates the entire exclusion of many of the items, or elements, mentioned in the report, leaving others of undoubted admissibility, sufficient to account for the verdict, as, for instance, the value to the leasehold of the land actually taken by the city.

Geo. W. Shaw & Co. v. Philadelphia, 169 Pa. 506, 509, is a companion case to the one last considered, excepting that the lease was made prior to the widening ordinance. The report is not satisfactory, but it does appear therein that the jurors were told "they could allow no damages to the plaintiff except for actual money loss caused by the necessary work of taking down with care the front of the building," and that "no allowance could be made for loss of profits." The case requires consideration in our present inquiry, for a point submitted by the defendant, to the effect that "the plaintiff is only entitled to recover the depreciation in the market value of his leasehold as affected by the widening," was refused. The trial judge called attention to the general charge, as substantially covering the request, but added, "I think the adverb 'only' would make the point too strong." On appeal, we said that, under the special circumstances of the case, the refusal could have done the defendant no

material harm; but we further said, "an absolute affirmance of the point without qualification would have been error," assigning as a reason that "the depreciation in the value of the leasehold would not be the only subject for allowance of damage." What we evidently meant by this was that the jurors' attention could not with propriety be exclusively confined to the bare thought of depreciation in the value of the leasehold, but in connection therewith they were entitled to appropriate instructions concerning the various relevant elements which, in fixing an allowance of damages, they could properly take into consideration. The use of the word "only," with its context, was misleading, because the plaintiff was entitled to recover the depreciation in the market value of his leasehold not "only" "as affected by the widening," but also, in a large sense, as affected by its direct physical results; for the expenses following in the wake of and directly attributable to a public improvement are elements not to be overlooked. This explanation makes the decision now under discussion entirely accord with the trend of our rulings upon the same general subject in the other cases here cited.

In Coons v. McKees Rocks Boro., 243 Pa. 340, 345, 347-8, the plaintiff was a tenant of certain houses, with a period of sixteen years yet to run. We ruled it was permissible to introduce in evidence the cost of "making the buildings conform to the new grade, so that they might continue the productive (rent producing) value of the term"; for this "would most certainly affect the market value of the lease." We also ruled that testimony of experts to the effect that "the rental value had been and. would continue greatly reduced," was admissible; and stated the trial judge had correctly instructed with reference thereto as follows: "That evidence is not the basis of the damages, if there are any damages in this case, that evidence is simply offered to assist you in arriving at the question which is at issue here, and that is, the value of this leasehold......immediately before

this improvement was made and the value...... immediately after the improvement."

Ehret v. Schuylkill River East Side R. R. Co., 151 Pa. 158, 166, is another case of damages to a leasehold interest. At trial, the defendant presented a point calling attention to the fact that the lease contained a clause against subletting without the consent of the lessor, and, although other persons appeared as plaintiffs with the original lessee, that no such consent had been shown. On this state of affairs the court was asked to direct a verdict for the defendant; but we determined the request rightly refused. We further decided that, under the "somewhat peculiar—quite out of the ordinary—circumstances of the case," certain testimony which had been offered to prove the additional cost entailed upon the plaintiffs in the conduct of their business as the necessary and inevitable result of the condemnation, was proper "for the purpose of showing the value of the plaintiffs' lease of the lot appropriated by the defendant." In this connection we said the plaintiffs "sought to show the lease was worth what they claimed (its value to be) because it saved certain expenses...... because of the advantages it afforded"; and, therefore, we added, that the matters called attention to in the testimony in question "were elements which evidently and properly entered into the consideration and determination of the value of the lease ......"; and we stated it was "a mistake to say the introduction of the testimony...... was a covert attempt to recover profits." See also the discussion, on general subject of restriction as to showing profits, in Cox v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 215 Pa. 506, 509.

In Consolidated Ice Co. v. Penna. R. R. Co., 224 Pa. 487, 493, the plaintiff was the tenant under a lease which had a considerable period yet to run when the property was appropriated by the defendant; the improvements belonged to the tenant, with the right of removal at the termination of the lease. On appeal, this court held:

"The plaintiff was entitled to recover the value of its leasehold interest, including the use of the improvements it placed on the demised premises, for the unexpired six years of the term." We said: "Of course, this does not include estimated profits of future trade or business, or other supposed consequential injury. ......The plaintiff company was paying as a rental for the premises $2,150.00 per annum and the taxes on the property, but this rental did not include compensation for the ice plant......Subsequent to the letting, the lessee constructed the ice plant with the express reservation in the lease of the right, but without the obligation, to remove it at the expiration of the term. Therefore, in estimating the damages sustained by the plaintiff company, the jury should consider not only what the leasehold proper was worth over and above the rental and other charges paid by the lessee, but the value of the leasehold as improved by the ice plant. In other words, the loss resulting to the plaintiff company is the difference between the value of the leasehold, as improved by the ice plant, for the unexpired term, and the rental and other charges payable by the lessee. This, as is apparent, would include the use of the fixtures and machinery by the tenant as well as the use of the demised premises for the residue of the term. The value of the leasehold proper for the unexpired term would be what the premises would be worth for any purpose for which they could reasonably be used over and above the rental and other charges payable by the lessee. To this must be added the use-value of the machinery and fixtures until the expiration of the lease. These are not substantive elements of damage but are for the consideration of the jury in estimating the plaintiff company's loss by being deprived of the residue of the term."

The lessee of a wharf was the plaintiff in Kersey v. Schuylkill River East Side R. R. Co., 133 Pa. 234, 240, 241; he was allowed to recover expenses incurred in the necessary reconstruction of certain appliances essential

to the use of the leased property and to show that after such reconstruction the cost of operation was thereby increased. ,In dealing with this phase of the case, we said: "It is well settled that the proper measure of damages is the depreciation in the market value of the property....; but the elements to be considered in the ascertainment of this depreciation are varied......In the ordinary case of the appropriation of land......the opinions of witnesses ......are received on the question of its value......, but this is not exclusive of other, and in some cases better, methods of proof. It may be stated as a general principle, applicable to cases of this sort, that whatever injuriously affects the property, as the direct and necessary result of the location of the road upon it (here the change of grade), may be considered in the assessment of damages. In this case, the estate of the plaintiff was limited to a particular use; its enjoyment, in accordance with the terms of its creation, required that the appliances which had been rendered useless by the entry of the defendant should be reconstructed...... These matters were properly received in evidence...... not as specific items of claim, but as affecting the market value" of the lease.

Penna. R. R. Co. v. Eby, 107 Pa. 166, 173, was not a statutory proceeding growing out of the exercise of the right of eminent domain; on the contrary, the action was in trespass quare clausum fregit for an unlawful entry upon the leasehold interest of the plaintiff. The case is valuable, however, in connection with our present inquiry, for we there ruled that while, "with respect to the measure of damages, it was competent for the plaintiff to prove the value of the leasehold interest over the rent received," yet "estimated profits" could not be taken into consideration. The case is of further interest because in the opinion we take occasion to say: "It was competent to prove the market value of the leasehold by the opinion of witnesses in the same manner as it would be the value of other property; ......that value is what

the leasehold was worth—it was worth to the plaintiff the same sum as it was worth for sale and transfer—and the mode of ascertaining this sum is by testimony of witnesses upon its market value."

Pittsburgh, Va. & Charleston Ry. Co. v. Vance, 115 Pa. 325, 333, cited by the appellant, is a case where an owner of a mill property, damaged by the location of a railroad over a portion of his land, was permitted to show that this directly and permanently affected the trade of the mill, since it made access thereto difficult and dangerous. After announcing the usual rule applicable in such cases, to the effect that the difference in the market value of the property before and after the improvement is the measure of damage, we said : "If the peril and inconvenience to customers from this cause (location of the railroad) was such that they were induced to carry their grain to......other mills, and plaintiff's land was thereby depreciated," evidence to that effect was relevant and competent.

While we have found no Pennsylvania case which directly discusses the exact point as to whether or not damages can be recovered for business losses accruing during the progress of, and due to temporary obstructions and inconveniences caused by the actual work of making a public improvement, yet, inferentially, all the authorities above cited rule in the negative. The preponderance of authorities in other leading jurisdictions is quite clear on the point. The cases almost uniformly hold that damages cannot be recovered for inconvenience in the transaction of business, or for the interruption, total suspension or loss of trade, custom or profits caused by the work of making a public improvement; that this temporary inconvenience, and all losses therefrom, must be suffered, for the law permits a recovery only of the permanent depreciation in value of property taken or injured, be it a leasehold or otherwise, such depreciation to be judged by the effect of the improvement when completed. The Constitution of Illinois (1870), provides (Art. II, Sec.

13) : "Private property shall not be taken or damaged for public use without just compensation." In Chicago Flour Co. v. Chicago, 243 Ill. 268, 271, it was held that, under this provision, a temporary interference with access to abutting property, during the time a street was obstructed by the progress of a public improvement, was not a damage to, or taking of, property within the meaning of the above provision; see also Lefkovitz v. Chicago, 142 Illinois App. 27, 29 (affirmed in 238 Illinois 23), where the court said: "It is axiomatic that all property is held subject to any burden which may be imposed from the fact of its being situate in the vicinity of or adjacent to a public improvement. The constitution provides no remedy in the way of an award of damages for temporary obstructions when streets are being repaired or public improvements installed in such streets, notwithstanding during the time of doing such work access to abutting property is cut off with resulting damage to the owner." The law is ruled to the same effect In re Board of Water Supply of City of New York, 130 N. Y. Supp. 997, 1001; Stadler, et al., v. Milwaukee, 34 Wis. 98; Brooks v. Boston, 36 Mass. 174, 178; Bishop v. North Adams Fire Dist., 167 Mass. 364, 370; and Northern Transportation Co. of Ohio v. Chicago, 99 U. S. 635, 643.

At the common law no damages were recoverable when property was taken for a public improvement. While, in course of time, compensation was allowed for an actual taking, and subsequently for an injury to property, yet, from the authorities which we have reviewed, it may seem that our constitutional provision allowing "just compensation for property taken, injured or destroyed" (Article XVI, Section 8) "made no change in the character of property for which damages could be recovered," and that under no circumstances can "profits of business" be claimed in condemnation proceedings.

To sum up, the authorities already cited lay down, or indicate, the following general rules: The measure of damages is the same whether the plaintiff be a tenant for

years or an owner in fee, and that is the difference in the value of the property before the injury and as affected by the completed improvement; thus, in the case of a tenant, the damages are measured by the market value, for any useful purpose, of the balance of the term, at the time of the completion of the improvement: Philadelphia & Reading R. R. Co. v. Getz, 113 Pa. 214; Philadelphia Ball Club, Ltd., v. Philadelphia, 192 Pa. 632, and other cases, supra. "The measure of damages in the case of an ordinary leasehold is the amount that any one would pay for the unexpired term over and above the rent and other charges" fixed in the contract of lease: Consolidated Ice Co. v. Penna. R. R. Co., 224 Pa. 287, and Penna. R. R. Co. v. Eby, 107 Pa. 166. The values involved may be shown by opinion testimony (Penna. R. R. Co. v. Eby, supra), but a plaintiff is not restricted to this class of evidence. He may prove the various elements directly entering into and affecting the value of the remainder of his term; which, however, must not be remote or speculative, but such as it is reasonable to assume would be taken into account by a prospective purchaser: Philadelphia & Reading R. R. Co. v. Getz, supra. The property interest of the tenant is to be estimated without regard to his personality, and, generally speaking, without consideration of the "actual state of his business" or the profits derived therefrom (Philadelphia Ball Club, Ltd., v. Philadelphia, and Becker v. Philadelphia & Reading Terminal R. R. Co., supra); but, if the leasehold is one which, because of certain peculiar qualities, in and of itself, actually produces a revenue or enables the tenant directly to make a regular saving in the conduct of his business, aside from the results of his personal management (Ehret v. Schuylkill River East Side R. R. Co., 151 Pa. 158, and Kersey v. Schuylkill River East Side R. R. Co., 133 Pa. 240), then these are elements which may be taken into account in fixing the value of the term; and, of course, one always may show that, by reason of the public improvement, the

rental value of the demised premises has suffered a lasting depreciation which, owing to the fact that the actual rent to be paid must remain as theretofore, necessarily would affect the market value of his leasehold (Coons v. McKees Rocks Boro., 243 Pa. 340). In other words, one may show that, under the requirements of his contract, he is obliged to pay the same rent as before the improvement, whereas, as a matter of fact, if he were about to take a new lease, according to the reduced rental values caused by the improvement, in all probability, he would secure it at a certain lower rental; hence, because his lease calls for, relevantly speaking, too high a rent, the market, or selling value of the balance of his term is depreciated accordingly. In valuing the remainder of a term, while the fact that the landlord has the right to dispossess the tenant at any time upon a short notice may be an element for consideration, yet, when no such notice has been given, the mere presence of this provision in the lease will not absolutely defeat the right of recovery by the tenant, if he is able to prove a depreciation in the value of his leasehold interest, whatever it may be: Shipley v. Pitts., Carnegie & Western R. R. Co., 216 Pa. 512, and Ehret v. Schuylkill River East Side R. R. Co., 151 Pa. 158. A plaintiff is not entitled to compensation for indirect injury to his trade or for loss of profits suffered during the time occupied in making a public improvement, recovery being restricted to the direct and permanent effect of the physical injury to the demised premises upon the value of the balance of the tenant's term. If the completed improvement permanently interferes with access to the leased property, the jury have a right to consider this an element of damage affecting the value of the leasehold, and, in order to show the extent of such interference, it is permissible to prove the falling off of trade or custom directly attributable thereto: Pittsburgh, Va. & Charleston Ry. Co. v. Vance, 115 Pa. 325.

The rulings and instructions here complained of seem to be in entire accord with the law as laid down in the

relevant authorities and to fit the case as proved. The testimony offered by the plaintiff did not tend to show a permanent diminution in the market value of its leasehold, or even to show an apparent permanent falling off of custom due to the completion of the improvement; on the contrary, at most it made out only a temporary loss of profits due to the obstruction of the demised building while the regrading was going on. Moreover, the testimony did not show, or tend to show, that plaintiff's actual possession was disturbed, or that the market value of its leasehold interest was any less after the completion of the improvement than before; finally, there was no attempt to prove a reduction, or depreciation, in the rental value of the property, which had detrimentally affected the market value of the leasehold. In short, we conclude that, under the evidence, the rulings and instructions of the learned trial judge were adequate and without material error; hence, the several assignments must be overruled.

The judgment is affirmed.