# Philadelphia & Reading Railroad Co. *versus* Getz and Getz & Co.

1. The rule for the measure of damages for the taking of land by a railroad company for tracks, under the right of eminent domain, is the same whether the damages be to the tenant in fee, for life or for years.

2. If the location of a railroad so affects the property as to compel the removal of the business conducted by tenants from year to year to another place, and the machinery used in the business is in consequence depreciated as it stands, the difference between the value of the machinery in connection with the business conducted on the property and its value to be removed and applied to the same or other use, is a proper element of damage to be considered by the jury.

3. In ascertaining the value of the machinery, as it stood after the injury, evidence as to the expense of removing it, rendered necessary by the location of the railroad, from the property to a new place of business, is admissible.

4. In a civil case, when no request is made, the mere omission to charge upon a particular point, is not ground of error.

March 4th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county :* Of July Term 1885, No. 67.

This was an appeal by the Philadelphia & Reading Railroad Company from the assessment of damages by a jury, appointed under the Act of February 19th, 1849, to assess the damages sustained by Hiram S. Getz, owner, and H. S. Getz & Co., lessees, for land taken by said railroad company for a siding or tracks under the right of eminent domain. By agreement of the parties the appeal was put at issue under the form of an action of assumpsit in which Hiram S. Getz and H. S. Getz & Co. were plaintiffs, and the Philadelphia & Reading Railroad Company were defendants.

Hiram S. Getz was the owner of a tract of land situate at the southwest corner of Canal and Spruce streets, Reading, 81 feet on Canal and 110 on Spruce; upon it were erected some buildings, among them a marble mill and warehouse, and machinery used in the business of sawing marble, which business was carried on by the said Hiram S. Getz and his son James K. Getz, as the firm of H. S. Getz & Co. The firm owned the machinery.

On the 8th of April, 1878, the plaintiff in error surveyed a route for a siding, or branch road, from the West Reading track, on Canal street, to the Sheet Mill of the Reading Iron Works, and in so doing condemned and took a small corner of the lot of Mr. Getz, about a perch in area. The proceeding in this case is based upon the petition of H. S. Getz and H. S. Getz & Co. for an assessment of damages sustained for the taking of the land.

Upon a former trial the jury allowed Mr. Getz, the owner, $2,700, but under the ruling of the Court nothing was allowed the lessees, H. S. Getz & Co. A writ of error was sued out by both H. S. Getz and H. S. Getz & Co., and the Court was reversed. The case is reported in 9 Out., 547. Upon the second trial the jury awarded to H. S. Getz $2,760, and to H. S. Getz & Co. $4,140.

H. S. Getz & Co. were tenants from year to year. The premises had originally been leased by written instrument to Dresser & Linton for the period of four years and nine months from the 1st day of July, 1873. This term expired April 1st, 1878; but in the meantime the firm had changed until it consisted of H. S. Getz and his son James K. Getz, who held as tenants from year to year.

There was evidence that the location of the railroad rendered it necessary for them to move their place of business and with it their machinery.

On the trial Hiram S. Getz being on the stand, the plaintiffs' counsel asked—

" *Q.* What was the property of the firm on the lot worth—the machinery—what was that worth before the railroad was located there, and if it was affected by the location of the road, what was it worth afterward?

" *Mr. Snyder.* Objected to by the defendants, because:

" 1. The evidence offered is irrelevant and incompetent.

" 2. The plaintiffs having already shown that H. S. Getz & Co. were merely tenants from year to year, the evidence now offered does not furnish the correct measure of damages.

" 3. The firm of H. S. Getz & Co. have not set forth in their petition any leasehold interest, and cannot therefore recover damages for any injury to such interest.

" *The Court*, SASSAMAN, J.: On a former trial I was inclined to the view set out in this objection; but for the purposes of this trial, the offer is admitted, and bill sealed for defendants."

*A.* As we use the machinery it was worth all that it was before, only the expense of removing it and putting it up in running order where we have it now; we use it all again; and, of course, in taking down the machinery there was considerable broke in the way of timbers, and in fact, some of the machinery was broke; in such heavy machinery you meet with accidents; that was, I thought, something like $4,000—the expense of removing it. (Third assignment of error.)

The Court charged the jury, *inter alia*, as follows:

So far as the other part of the plaintiffs in this case is concerned—Hiram S. Getz & Co., a firm composed of Hiram S. Getz and his son James K. Getz—the rule of law as to damages would be very nearly the same. This case was here on trial before, and on this part of the case we then had considerable trouble. But since then those troubles have been obviated, and there is no particular difficulty about it now. In estimating the damages in this case, therefore, you can view the whole case as it stands, and make up your minds as to what the whole damages that were incurred were; and you can allow interest on the damages from the time that the land was taken, which seems to have been in November, 1878, and find that in the gross sum. That is, you find the damages to H. S. Getz alone, and the damages to H. S. Getz & Co., and on that they are entitled to interest from the time that the land was taken or that it should have been paid. That being so, it is necessary to say to you that the measure of damages is the difference of market value of the property before the construction of the railroad, and the market value of the property after it is affected by the building of the railroad; and we say again that in doing this you must have due regard to

the advantages and disadvantages that have accrued from the building of the railroad, if any.

[The same rule would also apply to the assessment of damages on the leasehold for the conduct of business there; and the measure of damages would be the difference in value of the leasehold, machinery, and business as affected and unaffected by the building of this railroad.]    (Fourth assignment of error.)

We do not intend to say anything else to you on questions of law, because the principles I have laid down to you are the governing principles—that the measure of damages is the difference of market value before affected and after being affected by the railroad.    [That is the principal and leading rule, and anything that comes from any other source bearing on the accruing damages, or on causing a removal there, would have nothing to do with the question before you.    It is only so far as the property was affected by the actual construction of this siding that would be actual damage; and anything that would come from any other source, increase of business, or that any other space would suit the parties better—you have nothing to do with.    All you have anything to do with is the effect of the construction of this railroad so far as the value of this property is concerned, either the ownership of the lot itself, or the ownership of the leasehold and the business there.]    (Fifth assignment of error.)

Verdict for H. S. Getz in the sum of $2,760, and in favor of H. S. Getz & Co., in the sum of $4,140.    Total, $6,900, and judgment thereon; whereupon the Philadelphia & Reading Railroad Company took this writ, assigning for error, *inter alia*, the admission of evidence and those portions of the charge above indicated.

*Jeff. Snyder* and *George F. Baer*, for plaintiff in error.—We submit that the injury done to Getz & Co. by the taking of this land, or the value of the thing taken from them, was to be measured by the difference between the rent reserved, and the value of the premises for the balance of the current year: Booker *v.* Railway Co., 5 A. & E. R. R. Cases, 357; Mock *v.* Patchin, 42 N. Y., 175; North Penn. R. R. Co. *v.* Davis, 2 Casey, 238; Railroad Co. *v.* Eby, 11 Out., 173.

The only damages claimed by the lessees, and the only evidence offered in that behalf was the actual cost of effecting a removal of their machinery and personal property about three years after the location of our road, and two years after the expiration of the year current when our location and construction of railroad was effected.

*H. Willis Bland (A. G. Green* with him), for defendants in error.

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886.

Hiram S. Getz, one of the plaintiffs, is owner in fee of a lot of ground, at the southwest corner of Spruce and Carroll streets in the city of Reading, fronting one hundred and ten feet on the former, and eighty-one feet on the latter street, and having thereon erected a mill and machinery, used for sawing marble, and for the manufacture of marble products, to which business the lot was mainly devoted. A small triangular portion of this lot, covered by the marble mill on the corner of the streets named, was appropriated by the company for the use of its tracks, and it is claimed, on part of the plaintiffs, that by the appropriation of this particular portion of the lot, the residue is greatly depreciated in value, not only to Hiram S. Getz, the owner in fee, but to H. S. Getz & Co., who, as tenants from year to year, were occupying the premises, and prosecuting the business aforesaid. The jury found for the plaintiffs in the sum of $6,900; $2,760 of this sum in favor of H. S. Getz, and $4,140 in favor of H. S. Getz & Co. There is no complaint as to the amount of damages found for the owner in fee, the assignments of error relate exclusively to that portion of the judgment in favor of the tenants.

It is a rule of law well settled in this State, that a tenant for years is the owner of an estate in the land, and is entitled to compensation for an injury done by a railroad or turnpike company, in the construction of the road; the advantages which the owner or owners of any other estate in the land may derive from the road cannot be deducted from the claim of the tenant for years: Turnpike Road *v.* Brosi, 10 Harris, 29; N. P. R. R. Co. *v.* Davis, 26 Pa. St., 238. He is entitled to compensation according to his interest: Brown *v.* Powell, 1 Casey, 230. We do not understand the existence of this rule as to the right of H. S. Getz & Co. to recover damages here to be denied; it is urged, however, that the Court erred, as to the measure of damages, and as to the matters proper to be considered by the jury in computing them.

The measure of compensation to be allowed in all cases has been very often declared in the decisions of this Court, and very recently has been fully stated in Pittsburgh, Bradford & Buffalo R. R. Co. *v.* McCloskey, 16 Weekly Notes, 561. Whether the assessment of damages be to the tenant in fee for life, or for years, the rule as to the measure of damages is precisely the same. What was the value of the property, that is to say, the tenants' interest therein, unaffected by the in

jury? What was its value as affected by the injury? The difference is the true measure of compensation. The damages must be measured according to the market value for any useful purpose, and the estimate both before and after the injury must embrace all the buildings, machinery, etc., which gave to the property its distinctive character as a marble mill. It was proper, therefore, to inquire what the property of H. S. Getz & Co., not only the lease, but the machinery and fixtures used in connection therewith, was worth before and after it was affected by the injury. This was the only way the jury could accurately ascertain the true amount of damages to which the tenants were entitled.

If the location of the railroad so affected the property as to compel the removal of the business conducted by the tenants to another place, and there was some evidence to that effect, and the machinery, fixtures, etc., were in consequence depreciated as they stood, it is clear, as was said when the case was here before : (9 Out., 547,) that the difference between the value of the machinery in connection with the business conducted on the property, and its value to be removed and applied to the same or other use, was a proper element of damage to be considered by the jury.

If the removal was in fact the necessary consequence of the location of the road, then the ascertainment of the value of the machinery as it stood after the injury, would seem to involve the consideration of the probable and reasonable expenses of removing it; if the location of the road did not necessitate a removal, then the machinery, fixtures, etc., were not depreciated from that cause, but there was some evidence that the removal was the necessary result of the location, and this was, we think, sufficient to admit the evidence as to the probable expenses. It is true the tenancy might have been terminated at the end of the current year, and a removal thus compelled at the expense of the tenants, but under the special circumstances of this case, we cannot assume that it would have been terminated; in fact, it was not, and the company cannot be absolved from the direct and necessary consequence of their own act, because of a contingency that might or could have happened at the end of the year. The determination of the lease, as an estate in the land was of course to be estimated upon the residue of the current year only, and of the machinery as it was connected with the leasehold property at the time, according to the value thereof before and after the injury; and as to the latter, the expenses of a compulsory removal, upon failure of the remedy by injunction were, we think, properly considered.

The charge on this branch of the case is not as specific,

[Mead *v.* Conroe.]

perhaps, as it might have been; the rule as to the measure of damages was stated in a somewhat general manner, but we cannot say that it was in any respect erroneous. When in a civil case no request is made, the mere omission to charge upon a particular point is not ground of error: Fox *v.* Fox, 96 Pa. St., 60.

The judgment is affirmed.

113  220
148  236
113  220
158  19
113  220
160  526
113  220
168  194
113  220
175  309

113  220
208  423
25 SC 105

113  220
29 SC 213

113  220
f220  632

113  220
224  403