## DALLAS COUNTY v. HART BROS.
### (No. 3034.)

(Court of Civil Appeals of Texas. Texarkana. April 6, 1925. Rehearing Denied April 16, 1925.)

1. **Eminent domain ⬚155—Lessee's right to use of land held "property" within eminent domain provision of Constitution.**

A lease creates a right to use of land, which right constitutes "property" within meaning of Const. art. 1, § 17, providing that no person's property shall be destroyed for public use without adequate compensation, since constitutional protection is not confined to real property, but includes any character of property necessarily damaged in promoting a public enterprise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

2. **Eminent domain ⬚147—Measure of damages to lessee is difference in value of leasehold before and after injury.**

The measure of damages to lessee of real estate for damages sustained by reason of elevation of property abutting on highway, obstructing approach to leased premises, is difference between market value of leasehold before and after change.

3. **Eminent domain ⬚147—Lessee not entitled to damages for future loss of profits.**

Lessee of real estate, suing county for damages by reason of elevation of highway which obstructed approach to leased premises, though entitled to have loss of profits of business considered as tending to show diminished value of lease, is not entitled to have such loss of profits considered as furnishing basis of compensation, nor is lessee entitled to damages for loss of future profits.

Appeal from District Court, Dallas County; Towne Young, Judge.

Action by Hart Bros. against Dallas County. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Muse & Muse, of Dallas, for appellant.

Leake, Henry, Wozencraft & Frank and George W. Sergeant, all of Dallas, for appellees.

HODGES, J. In September, 1913, the appellees, Hart Bros., a partnership, leased from the owner, John Barr, a lot 361½ feet square situated near the city of Dallas and west of the Trinity river. The lot was adjacent to a highway known as "West Dallas Pike," a continuation of Commerce street. The lease was for a term of five years, with an option to the lessees of renewing the lease for another term of five years in consideration of $14,400 to be paid in monthly installments. The lessees entered into possession of the property, and later erected thereon improvements valued at $15,000. The premises were used as a place for buying, selling, and boarding horses and mules, and for storing and selling stock feed. There was a frontage 300 feet or more on the West Dallas Pike. In 1916 Dallas county began the erection of a new bridge over the Trinity river at the point where it was crossed by this highway. The old structure was removed and replaced with another much higher. The increased elevation of the bridge, it is claimed, was made necessary to allow the freedom of navigation on the Trinity river. In order to conform the highway to the elevation of the bridge, the approach from the west side, in front of the property held by Hart Bros. under their lease, was raised 12 feet at the west end to 18 feet near the bridge on the east. This alteration in the highway obstructed the avenues of ingress and egress to and from the leased premises and seriously impaired the value of the lot for the uses then made of it, and also, it is claimed, damaged the business in which the lessees were then engaged.

This suit was later filed by Hart Bros. against Dallas county, for damages in the sum of $63,472.51. The items composing that aggregate are thus stated in the appellees' amended original petition:

| | |
|---|---:|
| Loss on sale of plaintiffs' own stock | $ 9,500 00 |
| Loss of commission on sale of other people's stock | 2,625 00 |
| Loss by reason of cancellation of rental contracts | 1,995 00 |
| Loss of transients' business on feed and yardage | 1,050 00 |
| Loss on sale of feed to customers and passers-by outside yards | 1,315 00 |
| Loss on weighing and delivery of cotton | 750 00 |
| Loss on pay roll | 4,095 00 |
| Freight on horses and mules from Dallas to Fort Worth | 1,966 80 |
| Loss on feed of 3,328 horses and mules handled at Fort Worth | 8,598 21 |
| Commission paid on 3,328 head of stock handled at Fort Worth | 3,390 00 |
| Yardage on 2,901 head of stock handled at Fort Worth | 825 00 |
| Loss on feed bill of hospital stock | 1,012 50 |
| Expense of raising and changing building and yards | 350 00 |
| Expense of making fill 10x150 feet | 1,000 00 |
| Loss on value of lease | 15,000 00 |
| Injury to good will of business | 10,000 00 |
| Total | $63,472 51 |

Dallas county answered by general demurrer and special exceptions to the items in the plaintiffs' bill of particulars. It was also alleged that the city of Dallas had condemned as unsafe the bridge over the Trinity river; that the elevation of the bridge was made to comply with a federal requirement and for the public safety; and that the elevation of the pike was likewise a public necessity.

The court submitted in the form of special issues the different items of damages set up in the appellees' original petition. The aggregate sum found by the jury as damages amounted to $14,437.75. The jury also found, upon other interrogatories, that the

alterations in the highway were made for a lawful purpose, in a lawful way, and that Dallas county was not guilty of any negligence in the manner of doing the work. Judgment was entered against Dallas county for the sum found by the jury.

It appears that prior to the filing of this suit John Barr, the owner of the lot in controversy, had sued Dallas county and recovered a judgment for damages to his freehold interest. An appeal was prosecuted, and that judgment was affirmed by the Court of Civil Appeals. See Dallas County v. Barr (Tex. Civ. App.) 231 S. W. 453. The appellees in this suit were not parties to that litigation.

In this appeal it is conceded that there was no negligence on the part of Dallas county, or its agents and employees, in building the embankment in front of the leased premises. It is also conceded that in elevating the highway the county had performed a needed public service in a lawful manner. It is not claimed that any portion of the premises were invaded, or that any of the appellees' property was taken by Dallas county. Liability is predicated solely upon that portion of section 17, article 1, of the state Constitution, which provides that—

"No person's property shall be *, * * damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person."

The controlling questions here presented are: (1) Can the owner of a mere leasehold interest in land claim the protection of that provision of the Constitution and maintain a suit for damages? (2) If he can, then what is the measure of his damages—the diminished value of his leasehold interest, or the diminished profits in the business then being conducted?

[1] While a lease conveys no actual interest in the land itself, it does create a right to the use of the land which falls within the definition of "property." The constitutional protection is not confined to real property, but includes any character of property necessarily damaged in promoting a public enterprise. G. C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467; 20 Cor. Juris, pp. 850, 851; 4 Sutherland on Damages, § 1069; Telephone Tel. Co. v. Forke, 2 Willson, Civ. Cas. Ct. App. § 365. It would seem, however, that the proposition is too elementary to call for the citation of precedents.

Passing, then, to the second question: What is the measure of damages in a suit of this character by the lessee of real estate? Authority to take, destroy, or damage private property for a public use or purpose may be acquired by one having the right of eminent domain through condemnation proceedings. Payment of the sum awarded in such proceedings exempts the party causing the injury from any fur-

ther liability for legitimate damages resulting from the lawful prosecution of a public enterprise. It follows, then, that the rule for measuring compensation in condemnation suits is the correct rule for measuring compensation in suits for damages. In one proceeding the compensation is fixed in advance of the injury, and in the other after the injury has resulted. The liability of one party and the rights of the other are the same in both instances.

[2] In estimating the damages which an owner of the freehold interest in land may claim, the courts have adopted as the proper standard, in ordinary cases, the difference between the market value of the land before and after the servitude has been imposed. Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924; S. W. Tel. & Tel. Co. v. Smithdeal, 104 Tex. 258, 126 S. W. 1049. There seems to be no logical reason why a different rule should be adopted in estimating the compensation which the owner of a leasehold interest may claim. In Philadelphia & R. R. Co. v. Getz et al., 113 Pa. 214, 6 A. 356, the Supreme Court of Pennsylvania used this language:

"Whether the assessment of damages be to the tenant in fee, for life, or for years, the rule as to the measure of damages is precisely the same. What was the value of the property, that is to say, the tenant's interest therein, unaffected by the injury? What was its value as affected by the injury? The difference is the true measure of compensation. The damages must be measured according to the market value for any useful purpose, and the estimate both before and after the injury must embrace all the buildings, machinery, etc., which gave to the property its distinctive character as a marble mill. It was proper, therefore, to inquire what the property of H. S. Getz & Co.— not only the lease, but the machinery and fixtures used in connection therewith—was worth before and after it was affected by the injury. This was the only way the jury could accurately ascertain the true amount of damages to which the tenants were entitled."

In submitting special issue No. 1, the court used the following language:

"The plaintiff claims a loss of business and a loss of profits for the 10½ months alleged, in loss on local rentals, yardage and feed, and commissions on sales approximating $3,100. You will therefore find from the evidence such loss of business, or loss of profits, if any, during the 10½ months alleged. Answer: $1,500."

In special issue No. 2 the jury was directed to find the damages resulting from the loss of profits on stock that would have been bought and sold during the time named. These furnish examples of the manner in which the measure of damages was submitted as a basis of the judgment rendered.

[3] The loss in the profits of the business then being conducted was a proper subject of inquiry, and such loss might have been considered, not as furnishing the basis of com-

pensation, but as tending to show the diminished value of the lease. 4 Sutherland on Damages, p. 3119, § 1066; Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924. The private "property" protected by the Constitution is the property owned and affected at the time it is taken, damaged, or destroyed —not property which may be thereafter acquired. If the owner of the freehold cannot recover prospective losses in the form of probable future profits, there is no legal reason why the owner of the leasehold interest should be permitted to do so. A leasehold may not have a market value, because of the statute which prohibits an assignment, or subletting; but it has an actual value susceptible of proof. The difference in that value before and after the erection of the embankment in front of the leased premises furnished the legal measure of the damages that might have been recovered in this suit.

For the reasons stated, the judgment will be reversed and the cause remanded.