Alexander Del Giorno, J.
Claimant is engaged in the outdoor advertising business throughout west-central New York State. On August 27, 1956, claimant entered into an “ Adver *100 tising Display Agreement ” between M. B. Mitchell, as ‘ ‘ grantor ’ ’ and claimant as ‘1 grantee ’ ’, whereby Mitchell granted to claimant ‘‘ permission and the exclusive right and privilege to occupy and use for the purpose of either constructing or painting and maintaining thereon advertising displays or devices including necessary equipment ” two parcels of vacant land on the Mitchell farm adjacent to the county line — Dansville State Highway 5398 (Dansville Highway). On these parcels were erected six outdoor advertising signs, two together on one side of the Dansville Highway and four together on the other side. The annual rental for the first two was $23, and for the other four the sum of $46.
The term of the agreement was five years, 1 ‘ with the right of renewal evidenced by regular tender of rental for a like period and annually thereafter for the next succeeding ten (10) years on the same terms and conditions ”.
The agreement provided that ‘ ‘ the privilege is given the grantee during the term of this contract to have free access to said premises on and over the property of the grantor, his heirs, successors and assigns, for the purpose of erecting and maintaining its said advertising displays or devices, including necessary equipment, and at the time of vacating said premises, for the removal therefrom of any and all material placed by it, which material it is understood shall always remain the personal property of the grantee and may be removed by it at any time ”.
The agreement provided further that “ the privilege is given the grantee to terminate this contract by giving written notice of its intention in the event that said advertising structures are entirely or partially obstructed, with or without the fault of the grantor; or in the event that any federal or state statute, municipal ordinance, rule or regulation shall have the effect of so restricting the use of said displays or devices as to diminish the value of said premises in the judgment of the grantee, and such termination shall be effective immediately”.
The agreement provided further that “ in the event of the erection of a permanent building on all or part of said premises, the grantor reserves the right to terminate this contract to the extent of that part of the premises to be so occupied by giving sixty (60) days written notice to the grantee * * * The grantee, shall, prior to the expiration of such period, remove its advertising displays or devices including necessary equipment from that part of the premises to be so occupied”.
The six outdoor signs on the property were 12 by 25-foot panels, unilluminated, and constructed of wood with posts sunk *101 into the ground. They were erected in about 1945 and were purchased by claimant in 1950 from another advertising company.
On November 13, 1958, the Department of Public Works notified claimant that the Dansville Highway was being reconstructed and stated that the advertising signs on the highway right of way would have to be removed as they interfered with the contractor’s work. After some negotiation with the said department, claimant sent its crew and equipment to Dansville and demolished the said signs on February 10, 1959. Negotiations were begun for compensation, but the department on February 3,1959, notified claimant that the signs were personal property and on February 16, 1959, that a “ clear interpretation has not been made by the Court as to whether such structures constitute personal property or real property ’ ’.
On June 2, 1959, claimant was served with a copy of the appropriation map entered in the Livingston County Clerk’s office on April 27,1959, on which map were indicated the former positions of the demolished signs, and on August 6, 1959, claimant filed the within claim.
Claimant seeks to recover the sum of $3,095.17, which includes (1) the difference between the fair market value of claimant’s leasehold interests and the rental called for by the terms of the lease, (2) the fair market value of the billboard structures at the time of their appropriation, and (3) removal costs.
Initially, it must be determined what relationship between the parties the ‘ ‘ Advertising Display Agreement ’ ’ brought about. A reasonable construction must be given to the instrument as a whole, considering the circumstances surrounding the parties'when the contract was made. An instrument may be given effect as a lease even though that word is not used. The word “ lease ” is used to designate the contract by which the relation of landlord and tenant is created (Babcock v. Dean, 140 Misc. 800), and has been defined as a species of contract for the possession and profits of land and tenements, either for life, or for a certain period of time, or during the pleasure of the parties, and as a contract for the possession and profits of land, for a determinate period, with the recompense of rent (51 C. J. S., Landlord and Tenant, § 202, subd. b). If the contract confers exclusive possession of the premises, or a portion thereof as against the whole world, it is a lease (Williams v. Hylan, 223 App. Div. 48; Williams v. City of New York, 248 N. Y. 616), while if it merely confers a privilege to use or occupy under the owner it is a license. If the contract is for *102 the exclusive possession and profits of the land, it is a lease, not a license (51 0. J. S., Landlord and Tenant, § 202, subd. e, par. [2]).
In any event, it is now established that the grant or lease of the exclusive right to place signs on a wall or fence creates an easement in gross.
In the case of Whitmier & Ferris Co. v. State of New York (12 A D 2d 165, 166), the Appellate Division held:
11 While doubts have arisen as to whether the grant or 1 lease ’ of the exclusive right to place signs on a wall or fence is a license or easement we conclude that it is now established in this jurisdiction that an easement in gross is thereby created. (Borough Bill Posting Co. v. Levy, 144 App. Div. 784; Rochester Poster Advertising Co. v. Smithers, 224 App. Div. 435; 1 American Law of Property, § 3.4; Ann. 10 A. L. R. 1108; see, generally, 3 Powell, Real Property, § 405; Restatement, Property, §§ 453, 454, 489-496; 17A Am. Jur., Easements, §§ 11, 12; 28 C. J. S., Easements, § 4.)
“ Subdivision 2 of section 29 of the Highway Law defines the term ‘ property ’ as used therein to include all interests less than full title ‘ such as easements permanent or temporary, rights of way, uses, leases, licenses and all other incorporeal hereditaments and every estate, interest or right legal or equitable. ’ ”
The Appellate Division cited Schulman v. People (11 A D 2d 273, 274), which held that the State had authority at law to appropriate an easement in, on and over plaintiff’s lands “ for the restriction, removal and prohibition” of any outdoor sign or billboard ‘ ‘ which is visible and capable of being seen by a person of normal visual acuity from the adjacent' State highway ”. In that case it was stated (p. 277) that “if it be true that the interference by the taking is substantial, it would follow that the just compensation to which they are entitled would be commensurate ”.
An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures. (Jackson v. State of New York, 213 N. Y. 34, 36.) Although as between claimant, the lessee, and Mitchell, the lessor, the advertising signs were chattels, and were removable at the expiration of the agreement between them, the appropriation by the State was an appropriation of all that was annexed to the land. (Tinnerholm v. State of New York, 15 Misc 2d 311.)
The rule which must govern here is that set forth in Matter of City of New York (Allen St.) (256 N. Y. 236, 249), cited in
*103 the case of Whitmier & Ferris Co. v. State of New York (supra), as follows: “ To the extent that the value of the real property as a whole is enhanced by the fixtures annexed thereto, the value of the fixtures must be included in what the city pays, and the tenant is entitled to part of the award, not because the fixtures added to the value of the leasehold, but because they belonged to him and their value enters into the value of what the city has taken.”
-The court cited the following cases as being to the same effect: Matter of People v. Johnson & Co. (219 App. Div. 285, affd. 245 N. Y. 627, certiorari denied 275 U. S. 571); Matter of City of New York (Slum Clearance) (24 Misc 2d 190; id., 24 Misc 2d 206.).
Un behalf of claimant, John A. Stahlbrodt, its secretary and general manager, testified that the cost of each panel at the time of purchase was $150. He claimed that today each similar sign would cost new between $300 and $350, and if it were a new type known as telephone pole panels each would cost $262.70, plus overhead. Mr. James Tennamore, assistant general manager of Whitmier & Ferris Co., Inc., who obviously is an expert on signs, also testified on behalf of claimant that these signs cost between $300 and $400 per panel in 1959 when new, and that if 15 years old they were worth, if in good condition, $150 to $175 per sign. The testimony does indicate that the signs were regularly maintained by the claimant in a condition suitable for their purpose, advertising. However, Mr. Stahlbrodt did not figure, by his own admission, the depreciation which naturally had taken place in all the signs involved in the claim. As to how long the subject signs would remain useful, the opinion of the witness fluctuated between 5 and over 15 years more.
On the question of the value of the leasehold interest, the witness Stahlbrodt testified that the 1956 rental per panel was $11.50; that on the date of taking, the rental value of each panel would have increased by 100%, to $23, an excess of $11.50, or $69 for the six panels. Basing the figure on the alleged period of the lease, on the exercise of options of 17 years 4 months, the witness stated that similar rentals would have amounted to $1,194.
The total arrived at by the witness Tennamore as to similar rentals was between $885 and $1,404.
As to the lease value per panel of claimant’s lease, Mr. Stahlbrodt stated that while the 1956 rental was $11.50, the 1959 figure would have been $25, an excess of $13.50, or $81 for the six panels and a total, for 37 years 4 months, of $1,404. He conceded that maintenance of signs is necessary because wood *104 structures decay, nails are broken. On cross-examination, he admitted that when the signs were destroyed, their metal facings were corroded and had to be destroyed also.
In addition to the items claimed above, the claimant demanded $150 as its cost for removal of the signs.
The State moved for dismissal of the claim upon the ground that claimant failed to establish a cause of action, and that the agreement did not create an interest in the land but merely a privilege to use the land. Decision thereon was reserved. •
On behalf of the State, Thomas S. Wills, Jr., real estate broker and appraiser, testified that prior to appropriation, the rental paid was $11.50 per panel. He agreed with Mr. Stahlbrodt that in 1959 the rental for the two new panels erected on the east side of the highway was $25 per panel; that the economic rent for the six panels would have been $150, whereas at the time of appropriation it was $69 per year. Thus, at the time of appropriation an advantage to the lessee existed in the sum of $81 per year in estimating the value of the leasehold interest. Mr. Wills stated that the projected value of the lease would be for five years. A fair return of interest on the capital invested would be 8% per year over the five-year period, and also 20% per year representing recapture of the capital over that period, or a total capitalization return of 28%. The fair market value of the leasehold interest, based upon the $81 advantageous rental divided by a capitalization return of 28%, is the sum of $281, which he rounded out to $300.
On cross-examination, the witness testified that he did not consider the leasehold interest as enhanced by the signs, nor, in reaching his valuation, did he consider the lease income. The element he considered was what a person would pay for a right to receive $81 per year for a given number of years.
The court does not concur with claimant’s theory that the replacement value should be computed on a basis of 17 years 4 months. The testimony indicates that the signs could not have that long a life. At best, it seems to me, those signs could have lasted another 5 to 8 years. On the other hand the court does not embrace the respective values advanced by the State. The court computes the value of the signs to be $150 for each.
The State urges further that claimant is estopped from contending that the signs were part of the realty because claimant exercised dominion over them and removed them; also, that since the signs were removed prior to the appropriation, there was no taking because the signs were not upon the land appropriated. The court disagrees with this viewpoint. The *105 State projected the signs in its appropriation map, and served a notice of appropriation upon the claimant, as well as notified claimant to remove the signs. (Whitmier & Ferris Co. v. State of New York, 12 A D 2d 165, supra.) It is difficult to conjecture how much more would be required to prove that these actions on the part of the State were an appropriation of claimant’s signs.
Referring again to the removal costs, the court with great reluctance may not allow claimant the cost of removal of the signs, even though such removal was ordered by the State. This item will be considered by the court in its allowance of the fair cash value of the signs to the claimant. (Matter of New York, West Shore & Buffalo Ry. Co., 35 Hun 633; Matter of New York Cent. & Hudson Riv. R. R. Co., 35 Hun 306; Matter of People v. Johnson & Co., 219 App. Div. 285, affd. 245 N. Y. 627; Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583.)
The court therefore awards claimant the sum of $900 representing the fair market value of the signboards at the time of appropriation as determined by their replacement value, and the sum of $650, the net fair rental value of the leases beyond the rent reserved, making a total sum of $1,550, with interest from February 10, 1959.
The motions heretofore made by the State on which decision was reserved are hereby denied.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.