Ronald E. Coleman, J.
The claim was duly filed on June 8, 1963 and has not been assigned or submitted to any other court or tribunal for audit or determination. By order of the court it was tried together with Stickles v. State of New York, Claim No. 40919. By a separate decision of this date we have decided both claims.
In 1956 the claimant leased adjacent properties in the Town of Hancock, County of Delaware, which contained sand and gravel deposits as follows: Susan E. Stickles 104± acres and Amos H. Bojo and Catherine Vetrone 69.299± acres. In 1957 the claimant leased from Harold E. Schofield and Mary A. Schofield 100± acres which contained rock deposits and adjoined the Stickles property. On the Stickles property the claimant constructed a plant to process sand, gravel, crushed rock and stone. On the Schofield property the claimant opened a rock quarry and constructed a primary crusher. The Bojo property was held as a reserve supply for sand and gravel. In the construction of new Route 17, the State appropriated approximately 26± acres from the property owned by Mrs. Stickles on which part of claimant’s plant was located.
The property under lease was located approximately five miles easterly of the Village of Hancock, was on both the northerly and southerly sides of old Route 17 and was bound on its southerly side by the East Branch Delaware River. Claimant also owned and operated a bituminous plant at Cadosia, approximately three and one-half miles westerly of this property at which it used sand and gravel products.
The lease provided that “ 5. The Lessee shall have the right at any time to remove any of the Lessee’s houses, tanks, structures or other equipment, appurtenances or appliances of any kind brought by it upon said demised premises whether affixed to the soil or not.” It also contained a provision that the lessee would pay any additional real estate taxes levied on the premises due to the installations placed thereon by it. The lease further provided that “ 9, In the event any of the prop *643 erty leased herein is taken by condemnation by the State of New York or any subdivision thereof, then and in that event the award in any such condemnation proceeding shall be payable to the Lessors hereof.” Accordingly, the lease terminated when the State made its appropriation and no claim was made herein by the claimant for any award based on any difference between retained rental and the economic rental for the remaining term of its lease.
The lease was for a period of five years commencing on September 15, 1956 with an option to renew upon terms to be mutually agreed upon. The State’s appropriation took place on December 23, 1960. Under the terms of the lease its initial term would have expired on September 15, 1961 but for the purposes of our determination we need not speculate as to whether the lease would have been renewed or on what terms. (Matter of City of New York [Allen St.], 256 N. Y. 236, 249.)
While the State’s appropriation was made in 1960, it was not until late 1962 and early 1963 that claimant dismantled its plant and relocated it at Hawk Mountain, approximately three miles westerly of the Stickles property where it presently is in operation. At that time the contractor constructing new Route 17 requested that claimant move its property so that the new highway on the Stickles property could be completed. The claim herein made by the claimant is that it is entitled to be paid for the improvements made by it on the Stickles property. In order to process sand, gravel, rock and stone, claimant had erected buildings, had placed machinery, bins, crushers, treatment plants and other equipment needed to process the raw material. The improvements made were of the type that were possible to move but to erect the same on the Stickles property required cement abutments and other installations which were permanent in nature and altogether claimant’s improvements were permanent in character. Claimant’s proof was that the installation, including the equipment in place on the date of the appropriation, had a value of $451,700 and that the cost of dismantling and moving it to the Hawk Mountain site was $451,040.76, which included also the cost of exploration and site preparation at that location as well as the cost of moving its primary crusher from the adjoining Schofield property. "While an expert witness for the claimant placed a value on its interest before and after the appropriation and a witness for the State testified to a sum for damages to claimant’s plant even though he considered it personal property, the testimony of both of these witnesses was nothing more than opinion testimony which was of no value to us.
*644 The question for us to determine is whether or not the improvements placed on the Stickles property by the claimant were realty or fixtures which are compensable. In McRea v. Central Nat. Bank of Troy (66 N. Y. 489, 495, 497) the court held that “The purpose of the annexation, and the intent with which it was made, is in such cases the most important consideration. The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and the intention of the party in attaching it * * # The object, and not the method of the attachment, appears to be considered the controlling feature.” In Matter of City of New York [Whitlock Ave.] (278 N. Y. 276) the court reiterated the rule that annexation, adaptability, and intention of permanency are effective to convert a chattel into a fixture, regardless of removability. The claimant as a lessee also would be entitled to compensation for fixtures installed by it which would have become a part of the realty if they had been installed permanently by an owner of the fee or which would cause injury to the realty or the fixtures by removal thereof. (Queensboro Farm Prods. v. State of New York, 6 Misc 2d 445, 449, affd. 5 N Y 2d 977.) While it was possible to move the improvements made by the claimant to the Stickles property in the erection of its processing plant and in fact they were moved, these improvements were of such a nature that it could be said that they were permanently installed and their removal caused damage to both the realty and the fee.
Recently there has been a trend to liberalize the law in respect to fixtures, particularly what is and what is not compensable. (Marraro v. State of New York, 12 N Y 2d 285, 291; United States v. Certain Props., etc., 306 F. 2d 439, see, esp. Il Progresso, pp. 445-449.) In these two opinions, there is a detailed discussion of the leading cases on fixtures. In addition, numerous cases from other States as well as New York are discussed with particular emphasis on recent developments in an article entitled “Fixtures in Condemnation — Concepts New and Old”, Sackman, 1964 Institute on Eminent Domain (Southwestern Legal Foundation Proceedings of Sixth Annual Conference April 30-May 1, 1964, published by Matthew Bender & Company, pp. 1-45).
A substantial award was made in this State based on the difference between the value of fixtures which had been removed and the value which they added when used in connection with the property as a “ going concern ” in full operation. (Glen & Mohawk Milk Assn. v. State of New York, 2 A D 2d 95, however *645 cf. Matter of People v. Johnson & Co., 219 App. Div. 285, affd. 245 N. Y. 627, cert. den. 275 U. S. 571.)
In Jackson v. State of New York (213 N. Y. 34, 35) the court said: “It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty.” The court further went on to say (p. 36) that * ‘ An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held. [Citing cases.] We say ‘ unless qualified when made,’ because we do not need at this time to decide whether the State, in giving notice of appropriation, may except fixtures that would retain, after severance from the soil, a substantial value as personalty, and thus restrict the payment to the difference between the value of the detached articles and the value added to the building when they were used in connection with it. [Citing cases.] ” The appropriation made herein was not qualified, but under the terms of the lease, claimant on the termination of the lease did have the right to remove property erected by it on the leasehold. The appropriation made by the State terminated claimant’s lease. However, the removal of its property was an enforced removal being occasioned by the act of the State in making the appropriation at a time prior to that time when the lease would have terminated through acts of the lessor or lessee. The removal was necessary because it could no longer operate on the Stickles property and it did so in accordance with the terms of its lease.
We then have before us a somewhat similar question to the one which was left unanswered in Jackson v. State of New York (supra). In the opinion in that case Judge Cardozo cited Philadelphia & Reading R. R. Co. v. Getz (113 Pa. 214). In that case, there was appropriated by the railroad for use of its track some property owned in fee by the plaintiff H. S. Getz on which there was a tenant H. S. Getz & Co. On the property were some buildings, among them a marble mill and a warehouse including machinery used in the business of sawing marble carried on under the firm name of H. S. Getz & Co. The court held (p. 219): “If the location of the railroad so affected the property as to compel the removal of the business conducted by the tenants to another place, and there was some evidence to that effect, and the machinery, fixtures, etc., were in consequence depreciated as they stood, it is clear, as was said when the ease was here before: (9 Out. [105 Pa.] 547), *646 that the difference between the value of the machinery in connection with the business conducted on the property, and its value to be removed and applied to the same or other use, was a proper element of damage to be considered by the jury.
‘ ‘ If the removal was in fact the necessary consequence of the location of the road, then the ascertainment of the value of the machinery as it stood after the injury, would seem to involve the consideration of the probable and reasonable expenses of removing it ”. (See, also, McMillin Print. Co. v. Pittsburg Carnegie & Western R. R. Co., 216 Pa. 504; Shipley v. Pittsburg, Carnegie & Western R. R. Co., 216 Pa. 512.)
In some jurisdictions a statutory or constitutional provision requires compensation to be made for “ damage ” as well as for á “taking”. There, the situation is distinguished from that where a tenant’s fixtures are damaged or taken as a result of an appropriation of the property to which they are annexed. Payment to the owner of the fixtures in case of “ damage ” does not depend upon an adjudication that the fixtures are realty. (Pause v. City of Atlanta, 98 Ga. 92.) Without citing further like authorities, it suffices here to say that these authorities are of no avail to the claimant as here in New York, an award for damages for fixtures only can be made upon an adjudication that the same are realty.
Recently in this State in respect to signboards attached to buildings and standing on land owned by others, the courts have found that the owners of the signboards were entitled to an award for damages based on the remaining term of the lease giving consideration to the economic and retained rental and also the difference between the fair market value of the signboards at the time of the appropriation, based on the replacement value less depreciation and the fair cash value of the signs following the appropriation, giving consideration to the cost of removal in determining what the fair cash value of the signs was to the claimant following the appropriation. (Rochester Poster Adv. Co. v. State of New York, 27 Misc 2d 99, affd. 15 A D 2d 632; Whitmier & Perris Co. v. State of New York, 12 A D 2d 165, together with a memorandum decision of the Court of Claims following a retrial ordered by the Appellate Division, filed in the Clerk’s office August 15, 1962 [not reported].) The reasoning of these cases has not been applied to any other type of property aside from signboards. However, the claimant, Cooney Brothers, Inc., in this claim did not make proof by its expert witnesses which would comply with the proof on which these decisions were *647 made. This is a matter for expert opinion and not for the court to determine on a variety of unrelated proof.
• In United States v. General Motors Corp. (323 U. S. 373) the United States Government instituted proceedings to condemn space occupied by the respondent for a temporary period which did not cover the remaining period of the respondent’s lease on the premises. As a result the respondent had to move equipment from the building and it made claim for the damages sustained by it in doing so. The court held (p. 377): “ that items of actual loss which were the direct and necessary result of the respondent’s exclusion from the leased area might be proved, not as independent items but as elements to be considered in arriving at the sum which would be just compensation for the interest which the Government condemned.” These items were to be taken into consideration in determining what would be the usual market price which would be asked and paid for such temporary occupancy of a building which was under a long-term lease.
The record itself within the meaning of pertinent authorities will not support any finding of damages due to the fact that claimant could no longer utilize its plant located on the Stickles property appropriated by the State and was forced to move its plant to another location prior to the expiration of its lease. Without deciding the question, it is possible that if proof were made in like manner as in the signboard cases that claimant could have succeeded here. There is no question but what the claimant has sustained a substantial loss here through the enforced removal of its plant brought about by the appropriation and that the result is unjust to it.
Our decision in this claim is based solely upon our determination that the claimant failed to make proof of any damages which are compensable under present authorities. By a separate decision of this date, we have dismissed the claim made by Cooney Brothers, Inc., in the above-entitled and numbered claim.